NATHANIEL BAILEY v. RACHAEL HICKS.

Where the question was, to whom the credit was given on an account, and the evidence was conflicting, the Court said that the non-production of the books in which the goods were charged, could but be regarded as a circumstance unfavorable to the plaintiff; one which had, and was entitled to have, its weight with the jury, in forming their conclusion as to the fact.

Where goods are furnished to one person upon the sole credit and responsibility of another, the former is not responsible in an action by the person furnishing the goods, to recover the price.

If a proper ground for the admission of the evidence was not laid in the pleadings of the defendant, the plaintiff should have objected to its introduction, at the time. Not having done so, he cannot ask a new trial on the ground that its admission operated a surprise upon him. But it would be difficult to maintain that the evidence was not admissible under the pleadings, to explain and rebut the plaintiff's evidence.

Error from Polk. Tried before the Hon. Peter W. Gray.

Suit by appellant against William C. Hicks and Rachael C. Hicks, his wife, commenced April 17th, 1851, for the balance of a store account, for necessaries " contracted for by her in " the year 1849, and furnished herself and children, and for " expenses incurred by her during that year, for the benefit of " her separate property ;" also for the amount of an account " for necessaries contracted for by her in the year 1850, and " furnished herself and children, and for expenses incurred by " her during that year for the benefit of her separate proper-

" ty ; all which indebtedness, amounting to nineteen hundred " and seventy-three dollars and sixty-two cents, plaintiff avers " to be reasonable ; and the said William and Rachael, being " so indebted, afterwards to wit : on the 31st December, 1849, " the time the first account became due, promised to pay the " same on request ; and on the 31st Dec'r, 1850, the time the " account last above named became due, promised to pay the " same on request, yet," &c. Copies of the accounts were annexed to the petition and made parts thereof, commencing Mrs. Rachael Hicks, in account with N. Bailey, Dr., for necessaries furnished her family and plantation for the year eighteen hundred and forty-nine. And so of the other.

Fall Term, 1851, death of William C. Hicks suggested, and his representative Rachael Hicks ordered to be cited, which was done. Rachael Hicks filed her separate answer, containing a general demurrer, general denial, and specific denials, that she did not purchase the articles charged in said accounts, nor any of them, nor were they delivered to her, nor for her use or that of her children, nor for the benefit of her separate property ; and plea of statute of limitations. As administratrix she filed a general demurrer, general denial, and plea of the statute of limitations.

Spring Term, 1852, defendant's attorney gave notice in writing to the attorney of plaintiff, " to produce your original " book or books of entries, Day Book, Journal and Ledger, " containing the original entries of the items mentioned in the " accounts filed by you in said cause, that the same may be in- " spected by the defendants, and for no other purpose, unless " said defendants may introduce them as evidence." To which the attorney for plaintiff replied in writing : " The defendants are hereby notified that they cannot see the books on the terms mentioned."

Fall Term, 1854, plaintiff amended, by alleging the insolvency of William C. Hicks at the time of the purchase of the articles. and at his death ; and that the goods were sold, &c.,

upon the faith and credit of the separate property of Mrs. Hicks, which consisted, &c., and that they were necessaries for herself and family and for the benefit of her separate property.

Spring Term, 1855, defendant's demurrer overruled, trial, verdict for the defendants. Motion for new trial overruled.

It appeared from the statement of facts, that the accounts were for supplies, &c., for a family composed of William C. Hicks and wife, their two daughters and two nieces, and some negroes, what number did not distinctly appear; it did appear that there were sixteen negroes belonging to the nieces, and a witness testified, that on the payment of certain mortgages on the property of William C. Hicks, before 1849, the plantation and some of the negroes were reconveyed to his wife, Rachael. It appeared that fifteen or sixteen hands were employed upon the farm in 1849 and '50. The plaintiff did not produce his books, but proved the accounts by his son, who had been his clerk, and who testified that he knew most of the articles to have been delivered to Mrs. Hicks and her daughters; that his father kept correct books, and that he knew the accounts to be correct, from having compared them with the entries in the books, in witness' hand-writing. The defendants proved that the plaintiff said he had refused to credit William C. Hicks after 1848; that Thomas Hicks, who was a bachelor, and guardian of the nieces, and who had their negroes brought out from Louisiana, where he resided, had told the plaintiff, that anything he would furnish the plantation, he would see it paid, or would pay it, the exact terms not being clearly proved; but it was proved, that after Thomas Hicks died, which was in the latter part of 1850, or early in 1851, the plaintiff presented these same accounts to the administrator of said Thomas Hicks, made out in the name of William C. Hicks, agent for Thomas Hicks, and told the administrator that Thomas Hicks had told him to furnish the family and plantation of Wm. C. Hicks with anything they wanted, except liquor for Wm. C. Hicks, and that he would pay it.—

The accounts were not sworn to, but witness (the administrator of Thomas Hicks) told plaintiff he would pay it, that the crop made on the Hicks plantation in 1850 should go to the payment of the accounts, (witness had married one of the nieces,) and they went to the plantation to deliver the crop, but Mrs. Hicks claimed the crop, which was already marked and baled, and witness then refused to pay the accounts; afterwards witness told plaintiff that the estate of Thomas Hicks would not pay more than fifteen or twenty cents on the dollar, and the accounts were not presented again for allowance.

It also appeared that the plaintiff, in receipting the bill of one of his customers, who had paid it by furnishing corn to the Hicks plantation, wrote the receipt as follows : " Rec'd Mr. T. Hicks' order for the above, Nov. 21st, 1850 ;" another, " Received payment by corn to Thomas Hicks, Nov. 26th, 1850." The person who furnished the corn in first bill, referred to, testified that he had no order from Thomas Hicks, but that he furnished the corn at plaintiff's instance, and that plaintiff told him Thomas Hicks had agreed to pay everything he furnished at the plantation except William C. Hicks' liquor bill. Plaintiff said he had stopped Bill Hicks' credit.

The first item in the accounts was dated February 11, 1849. A witness for the plaintiff, C. B. Neely, testified that Thomas Hicks employed him in Louisiana, to bring out the negroes belonging to his nieces, and put them under his control, as overseer, on the plantation of Mrs. Hicks ; came out in February, 1849. The nieces came out afterwards. Thomas Hicks employed him, but he thought that he and his brother William had arranged the matter between them. He was out on a visit in 1849 and again in 1850, about July.

*Yoakum & Branch*, for plaintiff in error.

*B. C. Franklin* and *H. N & M. M. Potter*, for defendant in error.

WHEELER, J. The jury evidently found for the defendant on the first question submitted to their decision by the charge of the Court, under the belief that the goods were furnished at the instance and upon the sole credit of Thomas Hicks; that they were originally charged to him, and that it was understood and intended that he alone was to be looked to and held responsible for the price. And we cannot say that their finding was not warranted by the evidence. There certainly was evidence tending to the conclusion, that the goods were charged originally to Thomas Hicks; that the credit was given to him alone; and that it was the intention originally, to look to him for payment. In the absence of the books of original entries, which the plaintiff declined to produce, we cannot say the jury were not warranted by the evidence in so finding. It may be true, that the plaintiff was not bound, in obedience to the particular notice served upon him, to produce his books in evidence. But certainly it was his right to do so, if he saw proper, though their production had not been called for by the defendants. (1 Cow. and Hill's Notes, 297, n. 201; 1 Grenl. Ev. Sec. 117; Underwood v. Parrott, 2 Tex. R. 168.) They, of course, were the best evidence of their contents: and would have shown to whom the goods were originally charged. In the conflict of evidence, and where there might be doubt, they, it would seem, should have been produced, if accessible; and it is not pretended that they were not accessible. Their production would at once have settled the question. When the evidence was so conflicting, and there was so much evidence going to prove that the credit was given exclusively to Thomas Hicks, the non-production of the books in which the goods were charged, can but be regarded as a circumstance unfavorable to the plaintiff; one which had, and was entitled to have, its weight with the jury, in forming their conclusion as to the fact. There was not wanting a motive for Thomas Hicks to purchase supplies on his own account. His wards were of the family of the defendants; and

their negroes were employed upon the plantation. He was the proper person to make contracts for the purchase of supplies for them. If he did so, and it was the understanding and agreement between him and the plaintiff, that the goods were furnished on his sole credit and responsibility, and that he alone was to be looked to for payment, he was the principal debtor, and not merely a guarantor, or surety; and though the goods may have been purchased and intended for the use of a third person, yet such third person not being a party to the contract with the plaintiff, not having received the credit, or been charged originally upon the sale of the goods, would not be responsible in an action by the plaintiff to recover the price. (Chit. on Con. 445, and cases cited in notes.)

It is said in the application for a new trial, and in argument, that the account was opened and a part of the goods were furnished before Thomas Hicks came to the country. It however does not so appear. The witness, Neely, was employed as overseer by Thomas Hicks, in Louisiana, and came out in February, 1849, bringing with him the negroes, of whom his employer had charge as guardian. Thomas Hicks employed him, but he supposed he and his brother had arranged the matter between them. It does not appear at what time in the year 1849 Thomas Hicks visited his brother; but the reasonable inference from the evidence is, that it was before he sent out Neely as overseer, which was in February; and the first item charged in the account was on the 11th of that month: so that it does not appear that the agreement between him and the plaintiff was not entered into before any part of the goods was furnished.

Again, it is said the plaintiff was taken by surprise by the defendants' evidence, as they did not apprise him, by their pleadings, of their intention to prove that the goods were not furnished upon their credit; but on that of a third person. If a proper ground for the admission of the evidence was not laid in the pleadings of the defendants, the plaintiff should have

objected to its introduction, at the time. Not having done so, he cannot ask a new trial on the ground that its admission operated a surprise upon him. But it would be difficult to maintain that the evidence was not legally admissible under the pleadings, to explain and rebut the plaintiff's evidence.— And in his motion for a new trial, he does not mention any witness, or means by which he will be able to disprove or explain, upon another trial, the evidence by which he says he was surprised. He does not say that the entries in his books will afford such evidence. That ground of his motion rested on his own unsupported affidavit and was manifestly insufficient.

As respects the liability of Mrs. Hicks, the charge of the Court was substantially correct, and in accordance with the law as heretofore held by this Court. (Christmas v. Smith, 10 Tex. R. 123; 8 Id. 397; Miburn v. Walker, 11 Tex. R. 329.) In its application to the evidence, it certainly was not unfavorable to the plaintiff. It does not appear what separate property the wife possessed. The land upon which the family resided, and some negroes, (it does not appear how many,) had been previously conveyed to her. Fifteen or sixteen hands were employed upon the farm in 1849 and '50 ; but there were sixteen negroes belonging to the wards of Thomas Hicks, upon the farm in those years : how many of these were "hands," does not appear. But it is unnecessary to examine the sufficiency of the evidence to charge the separate property of Mrs. Hicks, as the ground upon which the jury found their verdict, was irrespective of the liability of her property. We cannot be insensible of the apparent hardship of the case, upon the plaintiff. But we know of no legal principle upon which this Court can relieve him. If he trusted one who was unable to make satisfaction, it was his misfortune, from which the law cannot relieve, by giving him recourse upon others, whom he did not trust.

It is scarcely necessary to say, what this Court has so often

repeated, that the weight to which the statements of the respective witnesses was entitled, and the proper conclusion to be deduced from their testimony, it was exclusively for the jury to decide.   We see no legal cause for reversing the judgment : and it is affirmed.

Judgment affirmed.