**EDDINGSTON et al. v. ACOM.     (No. 1048.)***

(Court of Civil Appeals of Texas. Beaumont. Feb. 15, 1924. On Rehearing, March 29, 1924.)

**1. Partnership ☞6—One loaning money to rice growers for one-third net proceeds, with transfer of personalty as security, held not a partner.**

One contracting to loan not exceeding $4,000 to rice growers in consideration of one-third the net profits of the crop, with conveyance of their fixtures, etc., as security, did not thereby become a partner, though he advanced more than $4,000, and refused to permit the growers to farm separately, since he had no control over transactions between them, and merely interfered to preserve his security.

**2. Partnership ☞44—Terms of contract giving share of net profits of a venture held mere presumptive evidence of partnership.**

"The net profit rule" is not law in Texas, and terms of a contract, giving an interest in net profits of a venture to one contracting to furnish financial aid, *held* merely presumptive evidence of partnership as to him.

**3. Evidence ☞75—Testimony of maker of note that defendant assumed debts sustained finding of assumption where defendant withheld evidence.**

In an action on a note alleged to have been assumed by defendant who refused to produce a bill of sale, on demand by plaintiff, to prove defendant's assumption of the maker's debts, though admitting that his lawyer had it, testimony of one of the makers that defendant had so agreed sustained a finding of such assumption of debts.

**4. Pleading ☞248(6), 420(2)—Amended petition, pleading ownership of claim sued on instead of title, held not a variance, and sufficient in absence of exception.**

Where, after instituting suit for the price of goods, the seller went through bankruptcy, later repurchasing the claim, his amended petition specially pleading, not his title, but consideration which was sustained by the proof, and by an independent paragraph alleged his legal and equitable ownership, demand, etc., there was no variance, and in the absence of special exception the allegation of ownership was sufficient.

**5. Pleading ☞21—Alternative allegations of partnership or assumption of debts not antagonistic.**

Alternative allegations, in a petition on a note, basing defendant's liability on the theory of partnership or assumption of maker's debts, were not antagonistic, since a court findings on one would not negative the other.

On Rehearing.

**6. Appeal and error ☞891—In absence of diligence, affidavits not considered for first time on appeal.**

In the absence of proof of diligence to procure affidavits for presentation at the trial, the appellate court cannot consider them on appeal.

**7. Appeal and error ☞197(4)—Defendant's conduct held to preclude objection on appeal to variance.**

In an action on a note against one alleged to have assumed it, defendant could not complain on appeal of variance between allegations of a written assumption and proof of an oral one, where he was not misled, pleaded no surprise, though the case had been pending for many months before trial, and without objection proceeded with his defense.

**8. Appeal and error ⬅➡930(1)—Evidence and pleadings considered most favorably to party having verdict.**

In determining an appeal, whether the evidence or pleadings support the jury findings, the court must consider them most favorably to the party obtaining the verdict.

O'Quinn, J., dissenting on rehearing.

Appeal from District Court, Jefferson County.

Action by O. H. Acom against A. T. Eddingston and others. Judgment for plaintiff, and defendants appeal. Affirmed.

E. A. McDowell, Jno. M. Conley, and P. D. Renfro, all of Beaumont, for appellants.

Smith, Crawford & Sonfield, B. F. Pye, and J. M. Cormack, all of Beaumont, for appellee.

WALKER, J. On the 1st day of January, A. D. 1919, appellant on the one part and G. O. Daniels and L. L. Eden on the other entered into the following contract:

"United States of America, The State of Texas, County of Jefferson.

"Articles of agreement between A. T. Eddingston, G. O. Daniels, and L. L. Eden, all of Jefferson county, Tex., witnesseth:

"That, whereas, the said G. O. Daniels and L. L. Eden are desirous of raising and selling, and are desirous of entering the art and trade of such business, but have not the means and money so to do; and

"Whereas, the said A. T. Eddingston, in consideration of the hereafter presents, has agreed to give the aforesaid parties financial aid with which to carry on said business;

"Now, therefore, it is mutually agreed by and between the parties hereto that the said G. O. Daniels and L. L. Eden are to engage in the art, trade, and business of raising and selling rice, on a tract of land lying in Chambers county, Tex., on the Anuhuac Canal, containing five hundred acres more or less, which said tract they have leased from C. C. Rush of said county, the rental of which being one-half (½) of the rice, gross, raised on said land per year, the said C. C. Rush to furnish water, seed, and two-thirds of the fertilizer.

"That the said A. T. Eddingston is to advance this day the sum of one thousand ($1,000.00) dollars, or thereabouts, the same being one-half of the price of the purchase price of two Fordson tractors, the price of which being twenty-two hundred dollars, and to advance, to the parties aforesaid, in addition to the above sum or sums as may be needed for the purchase of other implements needed on said farm for the rice business, which is estimated with the above will amount to twenty seven hundred dollars, and such other and further advances as may be needed from time to time, such as money for wages for labor, groceries, feed for mules, etc., but in no event are such advances to exceed the sum of four thousand ($4,000.00) dollars, nor are the above parties to make demand on said A. T. Eddingston in excess of said amount, nor will be liable to them in excess of said amount.

"That it is hereby agreed by and between the parties hereto that the said A. T. Eddingston is to be secured in the amount of his advances to the said G. O. Daniels and L. L. Eden, and it is agreed by the parties hereto that he has a lien upon all the tools, implements, machinery, fixtures, belongings to the said parties and the rice raised by them.

"That it is further agreed by and between the parties hereto that the said G. O. Daniels and L. L. Eden, shall as soon as the rice is harvested, threshed, sacked and sold, reimburse and repay the said A. T. Eddingston the sum or sums of money or moneys advanced by him to the said G. O. Daniels and L. L. Eden for the operation of the herein business and as herein set forth, it being agreed by the parties hereto that the said money is to be repaid to the said A. T. Eddingston as soon as can be done and during the first year of this contract.

"It being further agreed by and between the parties hereto that after the payment to the said A. T. Eddingston of what is due him for advances, at the time of the selling the first crop and the first year of this contract, and after the payment of the land rent due the landlord, C. C. Rush, which is one-half of the rice crop, gross, per year, the balance in three (3) parts among the parties hereto, one-third being allowed to the said A. T. Eddingston as a consideration for his loan and financial assistance herein to the said parties G. O. Daniels and L. L. Eden, it being agreed and understood that the said A. T. Eddingston is to receive said one-third share during the life of this contract, of the rice crops and other crops raised during the years 1919 and 1920, in recognition and acknowledgment of his financial assistance herein, and it is expressly understood and agreed by and between the parties hereto, that under no circumstances is the said A. T. Eddingston to make any advances or give any financial assistance to said other parties herein after the first year, but that the business for 1920 must be operated solely at the expense of the said G. O. Daniels and L. L. Eden.

"It is further agreed by and between the parties hereto that the said G. O. Daniels and L. L. Eden are to devote all their time, energy, experience, skill and good will to said business of growing rice on said farm, and the said G. O. Daniels is to receive the sum of seventy-five ($75) dollars per month, salary for his services in the said business, and the said L. L. Eden, the sum of fifty ($50) dollars per month, salary, for his services, and that they shall not and will not at any time hereafter, during the period above named, exercise or follow the said business, or any other, to their private emolument or advantage, but shall and will from time to time, and at all times during said period, use their utmost endeavors, to the best of their skill and ability, carry on and pursue and operate said farm and business as their skill and experience in the rice business will permit, and that if one or the other of the said parties should at any time become discouraged and for any other cause leave said business, he thereby forfeits his right to any of the profits herein, and shall have no demand upon the others whatsoever.

"It being agreed by and between the parties

hereto that the said G. O. Daniels and L. L. Eden, shall keep during the said life of this contract and operation of the aforesaid business perfect, just and correct book accounts, wherein either of the parties hereto may have access thereto, showing all expenditures by the said parties and the moneys received by them, in fact every business transaction of the rice business, and shall render or cause to be rendered each to the other a statement of the condition of the business at the end of each year's rice business, or sooner, if required by either of the parties hereto.

"It is further mutually agreed by and between the parties hereto, and to all whom these presents may come, that the aforesaid agreement is not a partnership agreement, nor is the said A. T. Eddingston recognized as a partner herein, but this agreement is drawn for the purpose of protecting the said A. T. Eddingston in his loan and financial assistance to the said G. O. Daniels and L. L. Eden, and of securing him in his loan to the others, and of agreeing to a mortgage lien therefor, and of agreeing of the aforesaid G. O. Daniels and L. L. Eden of showing their appreciation and acknowledgment of said loan to them, by allowing the said A. T. Eddingston a recompense therefor of one-third as aforesaid, and until the said loan is paid to the said A. T. Eddingston, we, the undersigned, G. O. Daniels and L. L. Eden, as a security to the said A. T. Eddingston, hereby grant, sell, and convey to the said A. T. Eddingston all of the personal property by us owned and to be owned in said rice business, to wit, all Fordson tractors, implements, tools, machinery, etc., and the rice crop and all other crops of every kind and nature to be by us raised during the years 1919 and 1920 on the aforesaid five hundred acre tract of land leased from C. C. Rush.

"To have and to hold the same until said amount or amounts advanced are paid, giving him such power and authority in the premises to enforce his loan as the law directs.

"Witness our hands in triplicate, at Pt. Arthur, Texas, this 1st day of January, A. D. 1919.                    A. T. Eddingston.
              "G. O. Daniels.
              "L. L. Eden."

The parties to this contract undertook to perform its conditions in raising the rice crops. Daniels and Eden became heavily involved, and because of the fall in the value of rice were made wholly insolvent. In raising the crops they bought supplies from appellee, evidenced by an open account in the sum of $2,416.20, and by a promissory note executed to appellee by Daniels and Eden in the sum of $2,905.87. After Daniels and Eden had failed to pay the debts against them incurred in raising the rice crops, they sold and assigned to appellant certain tools, machinery, and grain, etc., executing to him a bill of sale therefor. On the trial of this case appellee demanded of appellant the production of this bill of sale, but he refused to produce the same, though admitting that it was in the possession of his attorney. After appellant had refused to produce the writ-ten bill of sale, G. O. Daniels testified as follows as to the contents of same:

"We gave Mr. Eddingston a bill of sale to the rice and implements and to the mules and everything, and he was to assume whatever debts that we owed; we gave him a list of what we owed, and I went to Batson, and went to work in the oil field, and didn't hear any more about it.

"At that time there was also an arrangement with Mr. Eddingston whereby he assumed liability for those debts; he said that he was going to have to pay them, or was going to pay them.

"I will state the terms of that bill of sale as near as I can—the best I can remember about it is—it just described the property and where it was located; that bill of sale included the rice; there was not any property retained by Mr. Eden and myself that we did not put into that bill of sale.

"That equipment cost us right around in the neighborhood of $13,000."

[1] In the execution of the original contract, as set out above, nothing was done by appellant not contemplated by the terms of the written contract, except he advanced Daniels and Eden large sums of money in excess of his contractual obligation, but the novation in the contract in relation to this fact did not vary its legal effect. When Daniels and Eden failed to meet their obligations to appellee, after due demand, he instituted suit thereon against Daniels, Eden, and this appellant on the theory that appellant was a partner under the terms of the contract, and alternatively, on the ground that appellant had assumed and agreed to pay the obligations of Daniels and Eden in consideration of their transfer to him of the tools, machinery, grain, etc. At the time this property was sold to appellant by Daniels and Eden, he held a mortgage against it to secure him in the sum advanced under the terms of the contract. After appellee filed this suit, he became a bankrupt, but by a legal chain of title reacquired, through the bankrupt court and the purchaser thereof, the title and possession of the claims involved in this suit. After appellee reacquired the account and note, he filed an amended petition, alleging the consideration for the note and account as he had alleged in his original petition, and in a separate paragraph further alleged that he was the legal and equitable owner and holder thereof, and that due demand had been made for the payment thereof, as he had alleged these matters in his original petition. Also, he alleged appellant's liability alternatively, as in his original petition; that is, he first alleged liability on the theory of partnership, and then, alternatively, on the theory that appellant had assumed and agreed to pay the account and note.

Upon a trial to the court without a jury, judgment was entered in favor of appellee

against appellant, which, as appears from the court's conclusions of fact and law, and based on findings that appellant was a partner with Daniels and Eden, under the terms of the original contract, and that he had assumed the indebtedness as a consideration for the transfer to him of the property as described in the bill of sale.

[2] The court erred in holding appellant liable as a partner. That relation was not created by the terms of the contract, neither as between the parties thereto nor as it affected third parties. Appellant was not given any control over the transactions between Daniels and Eden, nor did he, in the execution of the contract, participate as a partner. True, the record shows that Daniels and Eden at one time agreed among themselves to operate separately in raising rice, and appellant required that they work as provided by the contract, but in doing this he was only in the exercise of his judgment as to what was necessary to protect his funds jointly advanced to Daniels and Eden, and that his interference was not that of a member of the partnership. "The net profit rule" is not the law of this state. The terms of the contract giving appellant an interest in the profits of the venture at most was only evidentiary on the issue of partnership—presumptive evidence, as said by the Commission of Appeals in the well-considered case of Fink v. Brown, 215 S. W. 846. Again, in reviewing the effect of a stipulation providing for a division of profits, Judge Randolph has recently said, in Harding v. Giddings (Tex. Civ. App.) 256 S. W. 305, quoting the syllabus:

"In passing upon the question whether a contract created a partnership, the court must, if possible, give effect to the intention of the parties, having regard for the rule that parties may intend no partnership and yet form one."

And again:

"The sharing of profits and losses does not have the effect of establishing a partnership."

And again:

"A contract denominated a 'lease,' providing for participation in profits and losses in the handling of cattle, held not to create a partnership as between the parties."

While the granting of an interest in the profits is presumptive evidence of the existence of a partnership, yet in this case, construing the instrument as a whole, the theory of partnership is excluded, and when we go to the execution of the contract, as already stated, there is no evidence making appellant a partner.

[3] But, while not liable as a partner, the court made the following conclusions:

"I find that on or about the 1st day of February, 1921, that the defendants G. O. Daniels entered into a contract and agreement with the defendant A. T. Eddingston, by the terms of which the defendants L. L. Eden and G. O. Daniels agreed to and did transfer and convey to defendant A. T. Eddingston all of their interest in the rice crop raised during the year 1920, farming implements, Fordson tractors, tools, machinery, and equipment, as well as all their interest in all other property of the partnership to defendant A. T. Eddingston, and as a part consideration therefor the defendant A. T. Eddingston assumed and agreed to pay off all of the indebtedness incurred in planting, raising, and harvesting the rice crops mentioned in said contract, including the account and note of the plaintiff sued upon in this cause.

"I conclude that defendant A. T. Eddingston by having accepted a transfer from defendants L. L. Eden and G. O. Daniels of all of their interest in the 1920 rice crop, and of all their interest in the other partnership property in addition to his liability as a partner under and by virtue of the terms of said contract, dated on or about January 1, 1919, assumed and agreed to pay off all of the indebtedness, including the amount of plaintiff's account and note sued upon in this cause incurred in raising and harvesting the rice crops mentioned in said contract."

It was shown that the bill of sale between appellant and Daniels and Eden was in appellant's possession, and that he refused to produce it, after due demand had been made therefor. Under these circumstances, we think the testimony of G. O. Daniels, as given above, not only raised the issue of assumption and promise on the part of the appellant to pay appellee the amounts involved in this transaction, but sufficiently sustains the same. It has been held in this state in McCown v. Schrimpf, 21 Tex. 26, 73 Am. Dec. 221:

"[1] A promise upon sufficient consideration, made to one to pay the debt he may be owing to another, is sufficient to entitle the party to whom the promise is made to recover of the promisor. * * * [2] In our courts the creditor for whose benefit the promise is made may maintain the action thereon in his own name."

See, also, Strictland v. Higginbotham Bros. (Tex. Civ. App.) 220 S. W. 433; Denman v. Standard S. & L. Co. (Tex. Civ. App.) 200 S. W. 1109; Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562; Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Beitel v. Dobbin (Tex. Civ. App.) 44 S. W. 299; Spann v. Cochran, 63 Tex. 240.

[4, 5] There was no variation between the allegations and proof either as to ownership or liability. When this suit was instituted, appellee was the owner of the cause of action, by reason of having sold the goods to Daniels and Eden. Subsequently he was adjudged a bankrupt, and in process of administering his estate title to the note and the account passed to Galveston Dry Goods Company, who resold it to appellee, thus vesting in him the complete legal and equi-

table title. Subsequent to this transfer, appellee filed his amended petition, in which he specially pleaded, not his title, but the consideration for the note and account, which the proof sustained, and in an independent paragraph alleged that he was the legal and equitable owner and holder thereof, demand, etc. In the absence of a special exception to this allegation of ownership, it was sufficient to admit proof of all the facts offered. Appellee pleaded two grounds of recovery against appellant, one on the theory of partnership, which the trial court sustained and, alternatively, on the theory that appellant had, for a valuable consideration, assumed his debt and was obligated to him to pay the amount thereof. The trial court also found facts to sustain this allegation. These pleas were not antagonistic, but both state of facts could exist; that is, appellant could have been liable as a partner, and could have assumed their indebtedness. The findings by the court of one state of facts would not negative the other. For that reason, Saner-Ragley Lumber Co. v. Spivey (Tex. Civ. App.) 255 S. W. 205, has no application to the facts of this case.

There is no merit in appellant's contention that no demand for payment was made before the institution of this suit. Even if a demand were necessary, the facts raised the issue that such a demand was made.

### On Rehearing.

Since the original opinion was filed in this case, appellant has filed certain affidavits impeaching the evidence on which the trial court found that he had assumed and agreed to pay appellee's claims. From these affidavits and exhibits it appears that the written bill of sale from Daniels and Eden to appellant contained no stipulation that he was to assume the debts of Daniels and Eden. Daniels, the sole witness on this issue in the trial court, has filed an affidavit retracting his evidence as given on the trial, and confessing that he was in error. His affidavit sets out part of his testimony on the original trial, and then makes the following explanation and retraction:

"At the time I gave the above testimony in the trial of this case I was under the impression that the bill of sale contained a provision whereby Mr. Eddingston assumed liability and promised to pay our debts, and there was never any arrangement or agreement between Mr. Eden and myself with Mr. Eddingston concerning the debts that Mr. Eden and I owed, except the bill of sale executed by Mr. Eden and me to Mr. Eddingston on or about the 17th of January, A. D. 1921. It had been about two or three years since I had seen the bill of sale at the time I gave this testimony, and it was my impression at the time I gave the testimony that the bill of sale did contain a provision whereby Mr. Eddingston agreed to pay our debts; that is, the debts of Mr. Eden and myself. I have read the copy of the bill of sale hereto attached, and I state that this is a true copy of the bill of sale executed by me, G. O. Daniels, and L. L. Eden, to Mr. A. T. Eddingston."

[6] Appellant makes no showing of diligence excusing himself for not offering this evidence in the trial court. Under our holding in Fidelity Lumber Co. v. Adams, 230 S. W. 177, we cannot consider these affidavits. In that case, subsequent to submission, appellants filed with our clerk certain documentary evidence which they claimed impeached and destroyed, as a matter of law, the appellee's evidence on which he recovered the land in controversy. We overruled appellants' contention, after carefully reviewing the authorities cited by them, which they briefed as follows:

"Under the circumstances of this case, we submit that the honorable Court of Civil Appeals has the power and the duty to consider the pleadings and docket entries filed in said cause No. 2760, since they show that the testimony of the various witnesses, upon which the appellee, W. E. Adams, recovered his judgment in the trial court, was wholly false. The appellants, through no fault of their own and in spite of due diligence, were unable to produce these records in evidence in the trial court, because the same had not been discovered by them until after judgment had been rendered in that court for appellee. An appellate court may avail itself of authentic evidence outside of the record before it, when such a course is necessary to prevent a miscarriage of justice, or to avoid a useless circuity of proceedings. This doctrine has been laid down and followed in numerous decisions of various courts of the United States.

"In the case of Ridge v. Manker, 132 Fed. 599, 67 C. C. A. 596, is a very clear statement upon this point. Plaintiff instituted a suit for the foreclosure of a mortgage in the Circuit Court of the United States for the Southern District of Iowa. Judgment having been rendered against him, he appealed to the Circuit Court of Appeals, Eighth Circuit. Pending the appeal, the Supreme Court of Iowa, in a suit by the defendant in the case in the federal court against the plaintiff therein, decreed that the mortgage was invalid. The Circuit Court of Appeals, after the argument and submission of the cause, allowed evidence to be introduced of the decree of the Supreme Court of Iowa, and upon that evidence held that the decree of the Supreme Court of the cancellation of the mortgage was properly pleaded. The court said, at page 601 (67 C. C. A. 598): 'An appellate court may avail itself of authentic evidence outside of the record before it of matters occurring since the decree of the trial court, when such course is necessary to prevent a miscarriage of justice, to avoid a useless circuity of proceeding, to preserve a jurisdiction lawfully acquired, or to protect itself from imposition or further prosecution of litigation where the controversy between the parties has been settled, or for other reasons has ceased to exist.'

"The court cited a number of authorities, among which are the following:

"Lord v. Veazie, 8 How. (49 U. S.) 251, 12

L. Ed. 1067. The Supreme Court dismissed a writ of error upon affidavits and evidence that the parties to the suit had no real adverse interests, and that the action was a mere colorable dispute to obtain the opinion of the court upon a question of law which one of the parties desired to know for his own interest.

"Cleveland v. Chamberlain, 1 Black (66 U. S.) 419, 17 L. Ed. 93. The Supreme Court dismissed an appeal when it was shown, by affidavits and evidence on the motion to dismiss, that the plaintiff had purchased the debt of the defendant sued upon, and that there was no further controversy.

"Wood-Paper Co. v. Heft, 8 Wall. (75 U. S.) 333, 19 L. Ed. 379. The Supreme Court dismissed a bill for infringement of a patent upon receiving evidence that the plaintiff had bought the infringing patent.

"Dakota County v. Glidden, 113 U. S. 223, 5 Sup. Ct. 428, 28 L. Ed. 981. The Supreme Court received evidence outside the record, showing a compromise and settlement of the demand in the suit, and thereupon dismissed the writ of error.

"Little v. Bowers, 134 U. S. 547, 10 Sup. Ct. 620, 33 L. Ed. 1016. The Supreme Court dismissed the writ of error, after receiving evidence that the defendant had voluntarily paid the taxes for which the plaintiff was suing.

"Earl v. Morrison, 39 Nev. 120, 154 Pac. 75. The Supreme Court of Nevada in 1915, vacated a judgment based upon findings that the land in controversy was mineral land, and dismissed the action, because evidence was brought to its attention that the federal government had issued a patent while the case was on appeal, which amounted to a finding by the federal government that the land was not mineral land. The court said: 'Shall this court, when confronted with the undisputable and unquestioned proof that the government has determined that the land in question is not mineral in character, affirm a judgment or even consider the case upon the record as made in the lower court? If we were to affirm the judgment of the lower court, it could be set aside in an independent proceeding. What, then, is the sense in considering this case upon the record made in the lower court?'

"Scruby v. Norman, 91 Mo. App. 517. The appellate court received evidence outside the record that the plaintiff had, pending the appeal, been discharged by a bankrupt court, and thereupon dismissed and abated the action.

"The case of Caldwell v. Modern Woodmen of America, 90 Kan. 175, 133 Pac. 843 (Sup. Ct. Kan. 1913), is directly in point with the present case. In that case the plaintiff sued to collect the insurance upon the life of one Caldwell. The evidence showed that Caldwell had been absent for over seven years, and therefore was presumed to be dead. In the Supreme Court the defendant filed a petition for rehearing and filed depositions tending to prove that Caldwell was still living. The plaintiff objected to the consideration of that evidence, as beyond the jurisdiction of the Supreme Court, and that the fact that Caldwell was dead had been conclusively determined. The Supreme Court held that under the unusual circumstances of the case, they would remand the cause for further proceedings. The court said (90 Kan. 176, 133 Pac. at page 844):

'The plaintiff, relying upon the presumption of death after an unexplained absence for over seven years, obtained a verdict and judgment based upon the fact of death so determined. That judgment was affirmed. Caldwell v. Modern Woodmen, 89 Kan. 11, 130 Pac. 642. The petition for rehearing, however, was still pending when the discovery was made of this new evidence showing prima facie that the finding was untrue. Whatever might have been the result had the petition for rehearing been previously denied, in the present situation the court has jurisdiction to grant or refuse a new trial. This court cannot determine, it is true, from the new evidence, the question whether Caldwell is living. If that issue is to be retried, it must be retried in the district court; but in the exercise of its appellate jurisdiction this court may, and in the very unusual situation presented should, in order to prevent a failure of justice, consider the new evidence in determining whether a new trial of that issue should be granted. This evidence, uncontradicted as it is, shows that a mistake was made in a finding of a fact essential to support the judgment. In view of the evidence presented at the trial and the whole situation, it cannot be held that the defendant is precluded from proving the fact that Caldwell is living because of its failure to discover and produce the evidence at the trial. It may be conceded that, when the end of orderly judicial processes is reached, an adjudication, although based upon mistake, is final. Still a miscarriage of justice will not be tolerated so long as the court, by the use of such processes, can apply a remedy. To' the end that the truth may be determined and justice done, a new trial will be allowed of the issue presented by the pleadings, to determine whether W. H. Caldwell was alive when the action was commenced. To preserve to the plaintiff the fruits of the litigation in case that issue shall be determined in her favor, the judgment will stand, although execution will be stayed until such determination is made; and, if the issue shall be determined in her favor, the judgment will then be enforced, together with any additional judgment for accruing costs to which she may be entitled. If the issue is determined in favor of the defendant, the judgment will be set aside and judgment entered in its favor.'

"In Hess v. Conway, 93 Kan. 246, 144 Pac. 205, the Supreme Court of Kansas pointed out that the action of the court in the Caldwell Case was not based upon any statute, but that its power to consider the evidence, under such circumstances as were then present, was vested in it as a matter of law, and not by virtue of any statute. In this later case, however, the Supreme Court refused to consider affidavits because the new evidence would simply be the testimony of witnesses who had been present at the trial of the case in the court below.

"In 2 Am. Dig. Dec. Ed. 'Appeal and Error,' § 891, the following case is found digested: 'Although the Supreme Court receives no new evidence, and reviews alone such questions of fact as were before the lower court upon the proof there presented, there may be extraordinary and exceptional cases, where, upon the presentation of new evidence, this court would remand the case. Smith v. Board of Liquidation, Man. Unrep. Cas. 401.' This question has

not received serious consideration by the courts of Texas.

"In Fitzgerald v. Wygal, 24 Tex. Civ. App. 372, 59 S. W. 621, the Court of Civil Appeals refused to consider affidavits of a party that were filed for the first time in the appellate court, controverting the facts established by the motion for a new trial. These affidavits could have been filed in the court below, and therefore the Court of Civil Appeals refused to consider them, citing no authorities.

"In Counts v. Southwestern Land Co., 206 S. W. 207, the defendant, against whom judgment had been recovered by default, presented an affidavit to the Court of Civil Appeals that the plaintiff had agreed with him over a telephone to postpone the trial of the case, and for that reason, the defendant had not appeared at the trial. The Court of Civil Appeals reversed the judgment for plaintiff upon other grounds, and then in one sentence only it said: 'We are not authorized to consider for any purpose the affidavit filed in this court by appellee.' The court cited no authorities to sustain its position.

"In Garza v. City of San Antonio, 214 S. W. 488, the Court of Civil Appeals simply said that it could not consider a city map that did not appear in the statement of facts, citing no authorities."

In disposing of this contention in the Adams Case, we said:

"Since the submission of this case appellants have filed certain evidence in this court, raising no jurisdictional question, and pray that we consider it as a part of this record. This we cannot do, because, as we understand the rule in this state, we are without authority to consider evidence offered for the first time in this court affecting the issues passed on by the jury. Fitzgerald v. Wygal, 24 Tex. Civ. App. 372, 59 S. W. 621; Counts v. Southwestern Land Co., 206 S. W. 207; Garza v. City of San Antonio, 214 S. W. 488." Fidelity Lbr. Co. v. Adams, 230 S. W. 180.

Appellant renews his contention that the court's finding that he had assumed in writing the debts of Daniels and Eden is without support. Our original opinion sets forth all the evidence on this issue. Appellee's petition contained the following specific allegations:

"Among other considerations, said bill of sale or transfer provided that the said A. T. Eddingston assumed and agreed to pay off and satisfy all indebtedness incurred by said partnership in the raising and selling of rice," etc.

The record shows the following facts in relation to appellee's request of appellant to produce the original bill of sale:

"By Mr. Pye: We have given notice to produce that bill of sale, and we ask attorneys for Mr. Eddingston to produce the original bill of sale.

"By Mr. Renfro: We have it in our safe, but Judge Conley is away at Orange, and I can't get in the safe.

"It is agreed that notice to produce the bill of sale was served upon Mr. Eddingston's attorneys about 6 p. m. May 1, 1923."

Appellant testified:

"I don't know whether I got a bill of sale in the winter of 1920, in January, maybe February, 1921, for this rice and all of the farm equipment. That bill of sale is in Judge Conley's office. Oh, yes; I got the bill of sale all right, but I haven't got it now; it is now in Judge Conley's safe in his office."

Judge Conley's office was in the city of Beaumont. The trial of this case in the court below was not commenced until the 3d day of May, and was not concluded until the 4th day of May. Appellant made no request for a postponement of the case, and made no effort to secure the bill of sale from the safe of his attorney. After judgment was rendered against him, he made no investigation for the bill of sale so far as the record shows, and exercised no diligence whatever to introduce before the trial judge any additional evidence on that issue by filing a proper motion for new trial. While testifying in his own behalf, appellant did not deny that the written bill of sale contained the stipulation as pleaded by appellee.

[7] Appellant does not contend that the evidence fails to raise an issue that he assumed the debts, but says that there is a variance between the allegations and proof on this issue, in that appellee alleged a written assumption, while the evidence shows an oral assumption. This contention is made for the first time on this appeal; that is to say, the record fails to show that this point was presented to the trial court. When Daniels' evidence was offered, appellant did not object to it on the ground of the variance, nor did he move to have it excluded after the evidence was closed, but permitted it to remain in the record without objection on his part. As appears from our statement, the record clearly showed to the trial court that appellants' attorneys had the bill of sale in their possession and had had four days' notice to produce it, and that they made no request for a postponement, and after judgment was rendered against them made no effort to locate the original, and made no effort to submit additional evidence to the trial court by filing a proper motion for new trial. In weighing the evidence, the trial court should have and doubtless did consider appellants' failure to produce the original bill of sale as a circumstance against him. On the weight of the presumption against a party who fails to produce evidence within his control, our courts have said, quoting Michie's Digest, vol. 13, p. 1249:

"1. Doctrine Stated.

"The failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party. Bailey v. Hicks, 16 Tex. 222.

"The failure or refusal of a party to produce testimony, which might reasonably be supposed to be within his power, to explain or rebut circumstances of suspicion, strengthens the presumption arising from those circumstances. Thompson v. Shannon, 9 Tex. 536.

"Usually the force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means to do so are readily accessible to the party. Chandler v. Meekling, 22 Tex. 36, 44.

"The force of testimony on the mind is increased by the failure to rebut it, where, from the nature of the circumstances, its falsity can be easily shown, if it be false. Needham v. State, 19 Tex. 332.

"If evidence peculiarly within plaintiff's knowledge is not produced, or its absence accounted for, it will be deemed to militate against his case. Mutual Life Ins. Co. v. Tillman, 84 Tex. 31, 35, 19 S. W. 294.

"2. Doctrine Illustrated.

"* * * Where the question was to whom the credit was given on an account, and the evidence was conflicting, the court said that the nonproduction of the books in which the goods were charged could but be regarded as a circumstance unfavorable to the plaintiff; one which had, and was entitled to have, its weight with the jury in forming their conclusion as to the fact. Bailey v. Hicks, 16 Tex. 222."

See, also, Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 616; Pullman Palace Car Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624.

We think it clearly appears from Daniels' evidence that all the details of the transaction between him and Edens and appellant were consummated at the same time. It clearly appears from this evidence that appellant was to assume the debts owed by Daniels and Eden. The only uncertainty arising from the evidence is whether the written bill of sale contained that agreement. The evidence of Daniels does not negative a finding that the bill of sale contained the provisions alleged by appellee. Now, as appellant had it within his power to show that the written provision was not contained in the bill of sale, and as he failed to offer that proof after due demand had been made for it, we think the holding of our Supreme Court in Bailey v. Hicks, 16 Tex. 222, compelled the trial court to resolve this issue in favor of appellee.

Again, construing this evidence in the light of the circumstances under which it was offered, what construction did the parties to this litigation place upon the evidence of Daniels? If there was a variance between the evidence and the allegations, it should have been objected to upon that ground when offered. No objections were made. From this fact an inference should arise that appellant construed the evidence as being in point.

But, apart from all this, was the variance, if any existed, fatal to appellee's right to recover? Appellant was not misled by the evidence. He pleaded no surprise. Though this suit had been pending on the docket for many months, when the evidence was offered, he offered no objections, manifested no surprise, but proceeded with his defense as if the evidence was material. He did not make the point that he had prepared to defend himself against the allegations of the petition and was not prepared to meet evidence of an oral assumption. On this proposition, it was said by Judge Higgins in Parks v. Sullivan (Tex. Civ. App.) 152 S. W. 705:

"Plaintiff in his petition alleges that appellant contracted with Gieseke and himself for the sale of the house, whereas the evidence disclosed that the contract was with Gieseke alone. We do not regard this variance between pleading and proof as fatal to a recovery. Such a variance is not fatal, unless it misleads or surprises the adverse party. There is no contention that the variance misled or surprised appellant, or in any wise operated to his disadvantage, and none is apparent to us. We therefore overrule this contention. Terry v. French, 5 Tex. Civ. App. 120, 23 S. W. 911; Kirby Lumber Co. v. Poindexter, 103 S. W. 439; Haralson v. Traction Co., 53 Tex. Civ. App. 253, 115 S. W. 876, and cases cited in Michie's Texas Digest, vol. 13, pp. 1177, 1178. The fourth proposition is also founded upon a false premise of fact. The uncontroverted evidence does not show that Sullivan was the agent of Dawson; upon the contrary, the uncontroverted evidence shows that he was not."

[8] In determining whether the evidence supports the trial court's conclusion of fact, we are bound by the following proposition announced by our Supreme Court, through the Commission of Appeals, in Dickson v. Kilgore State Bank, 257 S. W. 867:

"In determining on appeal whether the evidence or pleadings support the finding of the jury, the court must consider them most favorably to the party obtaining the verdict in the lower court."

For the reasons stated, the motion for rehearing is in all things overruled.

O'QUINN, J. I feel impelled to dissent from the conclusion of my Brethren that this motion should be overruled. I dissent on the one ground that the evidence in the record does not support the judgment. In his petition plaintiff alleged:

"Among other considerations, said bill of sale or transfer provided that the said A. T. Eddingston assumed and agreed to pay off and satisfy all indebtedness incurred by said partnership in the raising and selling of rice," etc.

The record shows that notice was given Eddingston to produce the bill of sale upon the trial of the case. This was not done, because, as shown by the record, the chief counsel or member of the firm representing Eddingston, Judge John M. Conley, former Chief Justice of this court, was out of the city, and the safe in which the paper was lodged was locked, and the junior counsel,

who was conducting the trial on the part of Eddingston, could not get into the safe. My Brethren say that Eddingston "refused" to produce the bill of sale. This is a rather harsh statement of the matter under the facts. It was in no wise shown to be a deliberate refusal to produce the paper, but it was not produced under the circumstances stated.

Having pleaded a written contract, the burden was upon plaintiff to prove same as alleged. After a careful consideration of the evidence, I have concluded that there is no proof in the record that Eddingston, in the bill of sale, assumed the payment of the debts as alleged by plaintiff. The witness Daniels, upon whose testimony plaintiff's case rested, and upon which my Brethren rest their conclusion, testified:

"We gave Eddingston a bill of sale to the rice and implements and to the mules and everything, and he was to assume whatever debts we owed; we gave him a list of what we owed, and I went to Batson and went to work in the oil fields and didn't hear any more about it."

"That bill of sale was in writing: That bill of sale was written up in Judge Conley's office. After that bill of sale was written up, I signed it; Mr. Eden also signed it; that bill of sale was signed in Judge Conley's office here in Beaumont. I did not get a copy of it at the time; neither did Mr. Eden get a copy of it at that time. I do not know where the original of that bill of sale is now. I have never seen the original of that bill of sale since the time I signed it. After that bill of sale was signed up, Mr. Eddingston taken it. We had an arrangement with Mr. Eddingston when we turned that property over to him. He said that he would dispose of the property and pay off these debts, and if there was anything left he would give us our part of it. At that time there was *also* an arrangement with Mr. Eddingston whereby he assumed liability for these debts. He said that he was going to have to pay them, or was going to pay them, and he said that he was going to sell the property and pay them with the money."

"I will state the terms of that bill of sale as near as I can; the best I can remember about it is *it just described the property and where it was located; that bill of sale included the rice.* There was not any property retained by Mr. Eden and myself that we did not put into that bill of sale."

This is the whole of the testimony that throws any light on the question of whether in the bill of sale Eddingston assumed the payment of the debts in question. It is seen that the witness nowhere testifies that the bill of sale contained any sort of stipulation that Eddingston was to assume the payment of the debts. The statement, "We gave Eddingston a bill of sale to the rice and implements and to the mules and everything and he was to assume whatever debts we owed," falls far short of saying that the assumption of the debts by Eddingston was written into the bill of sale. The record, when read as a whole, shows that Daniels and Eden owed Eddingston for supplies and money advanced to them far in excess of the value of the property conveyed by the bill of sale, and it appears clear, I think, that Eddingston took over the property mentioned in the bill of sale to make himself whole as far as he could in the matters for which he had actually financed them. Moreover, Daniels testified:

"We had an arrangement with Mr. Eddingston when we turned that property over to him. He said that he would dispose of the property and pay off these debts, and if there was anything left would give us our part of it. At that time there was *also* an arrangement with Mr. Eddingston whereby he assumed liability for those debts."

The property was turned over to Eddingston by virtue of the bill of sale. Daniels says that at that time (when the property was turned over to Eddingston, whether at the time the bill of sale was executed in Judge Conley's office in the city of Beaumont, or when the actual delivery of the property was made is not shown) there was *also an arrangement* by which Eddingston assumed the debts. I think a reasonable interpretation of the testimony is that the expression "also an arrangement" denotes an additional arrangement to the bill of sale. My Brethren have, in effect, construed this testimony into a statement that the bill of sale actually contained an agreement on the part of Eddingston to assume the payment of the debts upon the consideration expressed in the bill of sale. It seems to me that the very opposite conclusion is warranted from the actual language of the witness; that also another arrangement in addition to that in the bill of sale was made. Furthermore, when Daniels was called upon to state the contents of the bill of sale, he did so, and nowhere so much as hints at an assumption by Eddingston of the debts being contained in it. He says:

"I will state the terms of that bill of sale as near as I can; the best I can remember about it is it just describes the property and where it was located; that bill of sale included the rice."

It is not reasonable to suppose that he would have forgotten or neglected to state that which was the very heart of the case, if it had actually been contained in the bill of sale. But my Brethren, in effect, say that notice was given Eddingston to produce the bill of sale, and that he "refused" to do so, and that therefore the presumption should be indulged against him that the bill of sale did contain the assumption clause as alleged by plaintiff. I have no cavil with my Brethren as to the general rule, but I do not think that it warrants the presumption of the plaintiff's whole case without proof of a "written" instrument as pleaded by plaintiff.

He made no case, and the mere fact that notice to produce the bill of sale was not complied with did not, in my opinion, warrant the presumption drawn, nor could it warrant the considering of such failure as a circumstance or inference of such strength as to supply the lack of secondary evidence sufficient to form the basis to which circumstances and presumptions could be properly added.

Where notice to produce a written instrument is given, the failure to do so only gives the right to prove its contents by secondary evidence, and surely does not authorize an absolute presumption that its contents are as alleged by the party pleading same. I do not think that my Brethren will insist that Daniels anywhere testified that the bill of sale contained the assumption of the debts by Eddingston, as alleged by plaintiff, for the language of Daniels is too plain. They seem to have indulged the presumption that he intended to do so, and hence, as Eddingston did not produce the bill of sale, the further presumption should be indulged that said assumption was written into the bill of sale. That carries the rule too far. The right to offer secondary evidence of the contents of an instrument in writing under the circumstances was open to plaintiff, and, as he failed to make any such proof, the circumstances of Eddingston's failure to produce the bill of sale does not justify a finding that the assumption clause was actually in the instrument, and that in my opinion is, in effect, my Brethren's holding. Gayle v. Perryman, 6 Tex. Civ. App. 20, 24 S. W. 850. In the case cited, it is said:

"The consequence of a failure to produce a deed at the trial upon proper notice from the opposite party is to make secondary evidence of its contents competent, and not to prove the contents as alleged."

But my Brethren say:

"While testifying in his own behalf, appellant did not deny that the written bill of sale contained the stipulation as pleaded by appellee."

He was not asked as to the contents of the bill of sale. He made no admission as to the alleged contract of assumption. Why should he deny it? Plaintiff had the burden of proving his allegation that the bill of sale contained the agreement to pay the debts. Plaintiff made no such proof. Daniels, when called upon to state the terms of the bill of sale, does not and did not even hint at anything in it about Eddingston's assuming the payment of the debts. Until such proof in some competent way had been made, appellant was not called upon to rebut it. The well-established rule that, where the battle rages around the question as to what are the contents of a written instrument, and the testimony is conflicting as to what they are,

and one of the parties is in possession of the instrument, and, when duly notified by the opposite party to produce the instrument upon the trial of the case, refuses or neglects to do so, the failure to produce the instrument may be regarded as a circumstance against him, in my opinion has little or no application to the facts as shown in the record, and at best could not go to the extent of establishing plaintiff's case.

Under the facts as disclosed by the record, I do not believe this judgment against appellant, by reason of which he will be called upon to pay debts neither contracted for by him originally, nor shown to have been assumed by him later, should be permitted to stand, and so I respectfully dissent from the order of my Brethren in overruling appellant's motion.