M. Ward Bailey, of Fort Worth, Tex., for appellants.

H. C. Wade, of Fort Worth, Tex., for appellees.

Before SIBLEY and HUTCHESON, Circuit Judges, and DAWKINS, District Judge.

HUTCHESON, Circuit Judge.

Submitted on an agreed statement of facts, this is another of those difficult cases in which the question to be determined is whether, though the parties to an agreement did not so intend, the terms of the agreement did not make them partners. It arises on the voluntary petition of two of the parties to the agreement admitting their bankruptcy and seeking to have themselves and the other parties to the agreement adjudicated a bankrupt partnership. The referee thought the agreement constituted a partnership, and, in an opinion set out in the record, gave his reasons for thinking so. The district judge thought otherwise. This appeal is from a denial of the adjudication prayed. It is submitted here on a record consisting of a stipulation that there was no material deviation from the terms of the contract; that the parties to it did not intend to form a partnership; and that the sole question to be determined on the appeal is whether the contract, set out in full in the stipulation and, in its material parts, in the margin [1]

---

[1] The agreement between Carl Werner, doing business as American Aircraft School of Texas, first party, and Irvin Aircraft Schools, Ltd., a limited partnership under the laws of California, second party, recited: (1) That first party owns and is operating an aircraft industrial training school specializing in welding instruction and is able to furnish the premises, offices and a sales force for the promotion and operation of an aircraft industrial training school specializing in branches of work other than welding; (2) that second party owns a standardized system of training aircraft production mechanics and is able to furnish equipment and teachers necessary for the operation of a school using such system; and (3) that first and second parties for their mutual benefit, but without thereby entering into a partnership relation, wish to cooperate in the establishment in Fort Worth, Texas, of a school for the training of aircraft production mechanics in courses of instruction other than welding. It then made these provisions: Second party agrees to organize and operate, in premises to be furnished by first party at Fort Worth, a school for the training of mechanics, second party to furnish and install all permanent equipment, and the instructors necessary, and give instruction according to the Irvin standardized system of training. First party agrees to furnish the premises necessary and suitable for the location of the school, and the office force, and sales organization, and agrees to exert its best efforts in advertising and promoting the school to be known as the American Aircraft School. Each party is to receive 50 percent of the gross receipts received in the school, first party agrees to pay all costs, expenses and liabilities in any way connected with the school except those

in fact and in law made a partnership. The referee recognized that the question was not easily determined and that while general principles ruled it, for all practical purposes, each case must stand on its own bottom. Gathering up in his summation the elements in the agreement which seemed to him to dominate it and make it a partnership, particularly that of a division of the gross receipts, he construed it as one for a joint business operation, and, therefore, a partnership.

The district judge, with an equal realization of the difficulties the problem posed, but, we think, with a better appreciation of the nature and effect of the agreement reached the conclusion that here was no combining of labors, skills, moneys, properties into a joint business enterprise with the object of sharing profits and losses, and, therefore, no partnership. He was impressed by the facts outstanding in the agreement, that each of the parties retained their separate ownership of the properties contributed by each to the conduct of the school, and that neither had any control over or say in the operations of the other, the Irvins having charge and complete control of the teaching of their system and having no control whatever over the first party's gathering up of students or its handling of the other business affairs. As the district judge saw it, the second party was an independent contractor, agreeing for the price stated, $3 per student and 50 percent of the gross receipts; to do the work of teaching for which it had been hired. He pointed out that the agreement said nothing of joint control, nothing of net profits and net losses, nothing of two parties owning a school and conducting it together. On the contrary, it provided for a fixed payment to second party of $3 per student plus 50 percent of the tuition price which was to be paid over to it, not after accounts were settled but upon receipt, and further emphasizing the separate rather than the joint character of the enterprise, was the agreement that second party was to teach all of the students that first party had already enrolled in its school at a different and very much less price.

■■ A consideration of the settled rule, both in Texas and elsewhere, makes it clear, we think, that the district judge was right. That rule, as it is stated in Re Fahey, D. C., 26 F.2d 382, affirmed Fahey v. Sapio, 5 Cir., 30 F.2d 330, is that where one is sought to be declared bankrupt as a member of a firm, the burden is on him who asserts the membership to prove that the person was in fact a partner, and "that this cannot be established by applying any rule of division of profits, either gross or net, or in fact any particular rule or set of rules is well settled. Such adjudication must be based upon the finding that there was between the persons claimed to be partners a

expressly assumed by second party, and to keep and maintain standard books of account, employ a certified public accountant and furnish complete financial statements. Second party to furnish the materials necessary for training the students, the cost of all permanent equipment for the Irvin system of instruction not to exceed $2500, and the salaries of all instructors employed in the school, the equipment to remain property of second party. In addition to agreeing to deposit 50 percent of the tuition to second party's account as received, first party agrees to pay second party $3.00 for each student, payable when enrolled. The tuition for the basic course was fixed at $150.00. The agreement was for a two year term with a provision for termination by either party for specified failures or defaults of the other, and provisions protecting second party in its unrestricted rights in the Irvin system except as agreed, including one that second party should not be restricted from organizing and operating schools in other places for the teaching of its system where the first party does not have a school. Students already enrolled in first party's welding school were to be taught the Irvin system for $5 per week plus $3 for materials. Emphasizing that they did not intend to be, and were not, partners, "it is expressly understood and agreed that this agreement is not to be construed as creating a partnership relation between first party and the partners comprising second party, but is, on the other hand, to be construed as a working arrangement making use of those contributions which each of the parties hereto is best able to contribute." Finally there were general provisions giving second party, in the event of first party's death, the right to take over the school, accounting to first party's representatives for the net amount to which first party would be entitled, providing that first party would not sell his interest in the school without second party's consent, and that the agreement, being in the nature of one for personal services, the interest of either shall not be assignable without the consent of the other party.

condition of joint ownership and control in the management of the business and the enjoyment of its fruits".

 In Fink v. Brown, Tex.Com.App., 215 S.W. 846, 847, where there was a provision for net profits, the court, quoting from 18 L.R.A.,N.S., 1079: "It has now become an established rule of law that a mere participation in profits does not, of itself, make the participant a partner", and stating further, "The net profit rule, broadly stated, has not found favor in the Supreme Court of this state", upon a careful review of the authorities, thus clearly summarized the law:

"First. It is sufficient to constitute a partnership that the parties are to have a community of interest in the profits as such.

"Second. In determining the question of whether a partnership exists, the actual relation consequent upon the engagement of the parties will be looked to; and as to creditors the court will ordinarily apply the doctrine that the party who shares the profits must also share the liabilities, unless it appears that the parties intended and constituted a different relation, in effect excluding that of partnership."

In conclusion, applying these principles to the contract, the court said: "It is clear from the provisions of the contract as a whole that the parties did not intend a partnership; that the relation was not created contrary to their intentions, unless the net profit stipulation of the contract, regardless of its other provisions, is sufficient for that purpose. * * * One provision only of a contract cannot be taken and a presumption raised upon it at variance with the effect of its other provisions. * * * The terms of the contract as a whole make it clear that the plaintiffs in error did not contemplate joining in a common business to be operated for their joint account, and in which they, as owners, each of an interest, would be entitled to share as principals in the profits, as such. This being true, they were not partners."

We think that decision controls the case at bar.[2] Here there was no joining in a common business to be operated for joint account in which they as owners each had an interest. Here there was a furnishing, by the owner of an already established school, of premises, management,

etc. and a hiring of teaching equipment and staff for a price fixed at one-half of the tuition charges plus $3 per student. Neither the property, the skill, the money or the services of one party were united with those of the other, each kept his contribution separate. In short, instead of being a joint enterprise, run by the two, it was a single enterprise run by the owner of the school by means of hiring the second party to furnish equipment and services for teaching at a fixed price. The district judge was right. His judgment is affirmed.

---

[2] Other cases in point are: In re Burgess, Lang & Co., 1 Cir., 297 F. 696; Ogus Rabinovich & Ogus Co. v. Foley Bros. Dry Goods Co., Tex.Com.App., 252 S.W. 1048; Eddingston et al. v. Acom, Tex.Civ.App., 259 S.W. 948.