## DAY v. WILLIAMS. (No. 8528.)

(Court of Civil Appeals of Texas. Ft. Worth. March 3, 1917.)

1. WATERS AND WATER COURSES ⊕⟳158½(2)— CONTRACTS—REMEDIES—DECREE—LANGUAGE OF STIPULATION.

In suit to restrain defendant's interference with an arrangement for pumping water on land conveyed to defendant by plaintiff, who reserved the right to use water, a decree awarding plaintiff the free use of the water in practically the language of the stipulation in his deed to defendant did not as matter of law award plaintiff any greater right than the stipulation would warrant.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189.]

2. EASEMENTS ⊕⟳61(9)—SUFFICIENCY OF EVIDENCE—USE OF ROAD.

In suit to enjoin interference with use of road by plaintiff, who had sold defendant the land, reserving the right to cross the land to have access to "the public roads," evidence *held* insufficient to show that the stipulation was placed in the deed to insure to plaintiff the right to use the private road running west across defendant's ranch, and formerly used as a convenient route of travel to a town.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 143.]

3. EVIDENCE ⊕⟳76—PRESUMPTION—FAILURE TO TESTIFY.

A party's failure to testify on a point as to which he must have knowledge raises a strong presumption against him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 96.]

4. EASEMENTS ⊕⟳61(9)—RESTRAINING CLOSING OF ROAD—BURDEN OF PROOF.

In suit by the vendor of a ranch to enjoin the buyer from closing a road across it on the ground that the right to use it had been reserved to the vendor, the burden was on plaintiff to establish his allegation that as part consideration for the sale the buyer agreed to keep the road open for travel by plaintiff and his tenants.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 143.]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by J. F. Williams against J. T. Day. From a decree for plaintiff, defendant appeals. Reversed and rendered in part; affirmed in part.

McMurray & Gettys, of Decatur, for appellant. R. E. Carswell, of Decatur, and C. M. Smithdeal, of Dallas, for appellee.

DUNKLIN, J. J. F. Williams sold to J. T. Day a tract of land consisting of 1,165 acres, which at the time of the sale was a part of what is known as the Rhome ranch, the headquarters of which consisted of a well, and windmill in connection therewith, dwelling houses, granaries, and other improvements. The area of the entire ranch was 2,563 acres, all of which was owned by Williams at the time of the sale. The tract sold to Day included what is known as the Smith county school land, and near its north boundary line the improvements constituting the

headquarters of the ranch were situated. In making the sale Williams reserved certain houses which he moved just north of the north boundary of the tract that was sold to be used as dwelling houses for his tenants on the tract reserved by him, and in order to secure water from the headquarters ranch well the following stipulation was placed in the deed of conveyance to Day:

"That said Williams is also to have free use of the windmill and well located on the north side of said Smith county school land so long as he shall own the adjoining property now owned by him, and he on his part agrees to keep same in such repair as is necessary for the pumping of water to be used by him only for farm purposes."

Adjoining the south boundary line of the track conveyed to Day was a public road running east and west known as the Rhome and Haslett road. The town of Rhome was a few miles in a northwesterly direction from the ranch headquarters. In order to reach this road occupants of headquarters of the ranch had used two private roads, one running from the headquarters in a southwesterly direction across pasture lands to a point where it connected with the public road mentioned, and the other running due south to the same public road; a gate being established in the south boundary fence at the terminus of each of said private roads. Another private road or passway had also been used in traveling to the town of Rhome. That road ran from the headquarters in practically a westerly direction until it left the ranch lands, through a gate, thence in a general northwesterly and irregular direction across lands owned by other persons, including one Mr. Davis, until it reached another public road, known as the Rhome and Justin road, the west end of which road led to the town of Rhome. By this route of travel the distance to Rhome from the headquarters ranch was three-fourths of a mile nearer than the route running from the headquarters southwest or south to the Rhome-Haslett road, thence on to the town of Rhome.

The deed from Williams to Day also contained the following stipulations:

"(5) That said Williams, so long as he owns the land now owned by him, adjoining the lands herein conveyed by him to said Day, shall have the right for himself, his tenants and employés, to cross the lands herein conveyed by him to said Day in order to get and have access to the public roads. * * *

"(7) That said Day agrees to give and donate a strip of land 15 feet wide off the west side of the Smith county school lands herein conveyed for road purposes, and to remove the fence therefrom when necessary, or whenever requested to do so by said Williams, his heirs or assigns."

This suit was instituted by Williams against Day for injunctive relief only. After alleging the sale, stipulations in the deed, and other facts recited above, the plaintiff further alleged that Day had breached the covenants contained in the deed for the free use by Williams of the well and windmill, and also the covenant for a right in Williams for himself and his tenants to cross the lands conveyed to Day in order to reach the public roads.

In the petition plaintiff prayed for an injunction to restrain Day from in any manner preventing him from having the free use of water from the well for the benefit of his tenants, and also from closing the gates and openings through Day's land on the said private ways of travel above mentioned.

The case was tried upon its merits by the court without the aid of a jury, and a final decree was entered granting to plaintiff all the relief prayed for, except the right of travel over the road running southwest from the headquarters to the Rhome and Haslett road, from which judgment the defendant has prosecuted this appeal.

Appellant insists that the evidence was insufficient to sustain a finding by the trial judge that the defendant had wrongfully interfered with plaintiff's free use of water from the well. He insists that the evidence conclusively shows that plaintiff breached his agreement to keep the windmill which pumped the water from the well in proper repair; that the defendant had been compelled to incur that expense himself; that plaintiff and his tenants had wrongfully so changed certain appliances in connection with the pump as to cause all the water from the well to be diverted into plaintiff's troughs so long as he needed the same, to the exclusion of troughs owned by the defendant; and by reason of all of which it conclusively appeared that plaintiff was not entitled to the injunctive relief prayed for with respect to the use of said well.

After a careful examination of the evidence, we are of the opinion that it was sufficient to support findings by the court that the defendant had breached his obligation contained in the deed to allow plaintiff the free use of the well, and that plaintiff had not wrongfully changed any of the appliances for pumping, as charged by the defendant, and we cannot disturb those findings.

[1] Appellant insists that the evidence conclusively shows that since the sale to him plaintiff has so changed the pumping appliances as to divert more of the water to his premises than he would be entitled to under the stipulation in the deed, and that the effect of the injunction granted would be to restrain the defendant from in any manner interfering with that arrangement and restoring such appliances to the condition which existed at the time of the sale. It is a sufficient answer to that contention to say that the portion of the decree that awards to the plaintiff the free use of water is in practically the very language of the stipulation contained in the deed, and hence it cannot be said as a matter of law that it awards to the plaintiff any greater right than that stipulation would warrant.

The decree with respect to the use by plain-

tiff of the private ways across Day's land reads as follows:

"And it is further ordered that defendant, his agents and employés, be, and they are hereby, enjoined and prohibited so long as plaintiff shall own said lands from obstructing the gates and openings through his (Day's) lands on the road leading south from the Rhome ranch to the Rhome and Haslett public road, and the road running west from the lands of plaintiff to and through the lands of ―――― Davis, so as to prevent the passage of plaintiff, his agents and employés in charge of and occupying his said lands through said gates and openings along said roads. But it is ordered that this prohibition do not apply to the road leading from said ranch in a southwesterly direction from said ranch to the Rhome and Haslett road described in plaintiff's petition."

Appellant concedes the right to plaintiff to use the private road running from the ranch headquarters due south to the Rhome and Haslett public road, and the evidence shows conclusively that plaintiff and his tenants have never been denied the use of that road, with the exception of a period of a few hours during which time the gate leading into the public road by that route was closed by mistake. But appellant insists that there is no proper basis in the evidence for the injunction restraining him from closing the gates in his west boundary fence and thereby preventing plaintiff from using the private road formerly used, and running in a westerly direction across the ranch, and described above. We are of the opinion that this contention should be sustained. The stipulation in the deed that Williams should have the right for himself and tenants to cross plaintiff's land in order to have access to "the public roads" is ambiguous, leaving the question of the understanding of the parties with respect to the meaning of such language to be determined by other evidence. The proof showed without contradiction that the private way running west across the ranch crosses the lands of other persons after leaving the ranch before it reaches any public road; in other words, that in order for plaintiff to reach Rhome by that route, it would be necessary for him to get the consent of other landowners to cross their land before reaching the public road, and that that private way after leaving the ranch ran in a very irregular course along private ways of other landowners to suit their convenience. The proof showed further that the private ways running south and southwest from the ranch headquarters to the Rhome-Haslett road were the ways of travel more commonly used by former occupants of the ranch than the private way running in a westerly direction; that after the sale to Day the gate across the west road where it passes out of the defendant's land had on different occasions been left open, and by reason of which defendant's cattle had escaped from the pasture in which they were confined and had thus caused defendant annoyance and labor to gather them up; that through the land which the plaintiff did not sell there was a

193 S.W.—16

private road leading from his tenant houses in a northerly direction about one mile to another public road running practically due west to the town of Rhome; but this route to Rhome from said tenant houses was nearly one mile farther than to travel the west private road across defendant's land. The evidence further shows that the western boundary of the land purchased by the defendant was in an irregular shape, the southern portion of which extended much farther west than the northern portion, and that the private road across the land running in a westerly direction passed out of the land at the west boundary of the northern portion thereof, a point considerably farther east than the west boundary of the southern portion. While the evidence is not explicit upon the point, it is reasonably apparent that it was within the contemplation of Williams at the time the sale was made that at some time in the future it might be desirable to have a road running from the Rhome-Haslett road north to connect with another public road running west to the town of Rhome, and for the purpose of accomplishing that end the stipulation was inserted in the deed binding Day to donate a strip of land 15 feet wide off the west side of the tract purchased by him for road purposes whenever requested so to do by Williams, his heirs or assigns; and it is apparent further that it was intended that that strip would be taken off the west boundary of the southern portion of the tract, and not off the entire western boundary.

[2] But it does not appear that that stipulation was placed in the deed for the purpose of insuring to Williams the right to use the private road running west across the ranch and formerly used as a convenient route of travel to the town of Rhome.

Defendant, Day, testified with respect to the negotiations between him and Williams leading up to the sale. After testifying that they rode over the land together and discussed the terms of the trade, he further testified as follows with respect to the west road mentioned above:

"I told Williams when I was looking over the land to buy it that I would not give him 50 cents an acre for that land with the road running through it in any direction, but there was no road. The only public road was south when I bought the Rhome place. * * * As to the road across the Davis place, there was no road when I bought that place across there. Rhome never traveled that road, never had made any road there, never had when I bought this land. I told Williams I wouldn't give 50 cents with the road through in any direction. That is the reason I gave the road south to keep anybody from going through my pasture. Nothing was said about that southwest road across the pasture between Mr. Williams and myself."

J. O. Terrell, the attorney who prepared the deed to Day, testified to the following conversation occurring in his office before he started to write the deed, Col. Rhome, plaintiff, Williams, and defendant, Day, all being present:

"I asked them to detail the road, having in mind that he didn't want it to go all over his place, and I think Col. Rhome's remark was that they would arrange the road he had used, or had been using for years on the ranch that ran down by the granary; I don't know whether he said south or southwest, but the same road and some road that ran up east was mentioned. Mr. Williams spoke up and said, 'Put it public roads,' and they all agreed to it, and I wrote it just as it is written here (referring to the deed)."

The witness Martin, who was present at the time a preliminary contract embodying the same stipulation as was afterwards placed in the deed was written, testified as follows:

"I was present in Mr. Terrell's office at Ft. Worth when they were drawing up this contract and talking about it, but I don't know that I was actually there when they signed it. I heard some talk about the roads. My recollection there was something said, something brought up there about the way Mr. Williams and Mr. Day should get in and out, or rather Mr. Williams should get in and out of the land on the north side that he was buying, and Mr. Day kind of objected to letting him go south, but he afterwards agreed, is my recollection. As far as I can remember now, they were talking about this road going southwest and the road going south, and Mr. Day said he would not agree to it going southwest or south either, but afterwards he went out and talked with Col. Rhome and came back and said he would let the road go south."

Joe T. Wilkes testified that he was engaged in the real estate brokerage business during the year 1910–1911, at which time the Rhome ranch was listed with him for sale by Col. Rhome, who then owned it; that he entered into negotiations for the sale of it to plaintiff, Williams, showing it to Williams several times, and that a sale was finally made to Williams by Col. Rhome during April or May, 1912; that in showing the place to Williams he pointed out the west private road as well as the south and southwest roads, and also a road running east from the headquarters ranch to another public road. This testimony, of course, might have been pertinent to the issue as to what Williams understood at the time he bought the ranch from Col. Rhome, but it would have a very remote bearing, if any, upon the negotiations and understanding between Williams and Day at the time Williams sold a part of the ranch to Day.

[3] The judgment recites that plaintiff, Williams, appeared upon the trial in person, as well as by his attorneys, and the statement of facts shows that he did not testify as a witness; neither is there any showing in the record of any excuse for his failing to testify. And his failure to testify raises a strong presumption that he, like Day, understood that the private way running west from the ranch headquarters would not be left open by Day as a way of travel by Williams and his tenants. Day's testimony to the effect that in the preliminary negotiations between him and Williams for the sale to Day by

Williams of a part of the ranch it was understood between them that that road would not be left open was uncontradicted; on the contrary, it was corroborated in a measure by the testimony of Terrell and Martin referred to above.

[4] The burden was upon the plaintiff to establish by proof his allegation that, as a part of the consideration for the sale, Day agreed to keep the west road open for travel to Rhome by plaintiff and his tenants; and, aside from the testimony referred to above of the witness Wilkes, which, as we have said already, amounts to practically no testimony at all to establish that fact, and aside from the stipulation in the deed for access "to public roads," and the further stipulation of an agreement by Day to donate a strip 15 feet wide off the west boundary of his tract, counsel for appellee have cited no evidence tending in any manner to prove that allegation. At all events the testimony referred to of Day, Terrell, and Martin, strengthened by the presumption arising from the failure of Williams to testify at all upon that issue, conclusively rebuts any possible inference of the truth of the allegation in plaintiff's petition that Day, as a part of the consideration of the sale to him, agreed to keep said roadway open. Mitchell v. Napier, 22 Tex. 120; Bailey v. Hicks, 16 Tex. 222; Miller v. Poulter, 189 S. W. 105, and other decisions therein cited.

For the reasons indicated, that portion of the decree of the trial court enjoining the defendant, Day, from closing the gates and openings through the land purchased by Day from plaintiff, Williams, on the road running west across those lands and through the land of —— Davis is reversed, and with respect to that road judgment is here rendered denying Williams a right to use that road, but in all other respects the judgment of the trial court is affirmed.

Reversed and rendered in part; affirmed in part.