**JAMESON et al. v. FARMERS' STATE BANK OF BURKBURNETT et al.    (No. 11801.)***

Court of Civil Appeals of Texas.   Fort Worth. June 11, 1927.

Rehearing Denied Sept. 17, 1927.

1. Judgment ⊃17(1)—Mere knowledge of filing suit or attendance on court will not give jurisdiction supporting default judgment (Rev. St. 1925, art. 2050).

Under Rev. St. 1925, art. 2050, mere knowledge that suit has been filed and even attendance on the court does not give the court jurisdiction which will support a default judgment without service of citation or appearance by defendant.

2. Judgment ⊃447(1)—Plaintiff directly attacking judgment in case wherein he was not served with citation, and did not enter appearance, need not prove meritorious defense.

In case of direct attack on a judgment by suit in the nature of a bill of review, where allegations and proof show that judgment was taken against plaintiff in case wherein he was not served with citation, and did not enter an appearance, it is not necessary to show meritorious defense in order to prevail.

⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 23, 1927.

3. **Evidence** ⬩586(2)—**In widow's suit to set aside assignment of mineral rights as security induced by false statements of husband's indebtedness, her testimony that she never saw husband's notes held to raise question of their existence.**

In suit by widow to set aside an assignment of mineral rights as security alleged to have been induced by false statements of one of the defendants as to husband's indebtedness, her testimony that, when she paid supposed indebtedness by making assignment, no notes were delivered to her, and that she had never seen husband's notes, *held* to raise question of whether notes ever existed.

4. **Judgment** ⬩463—**In suit to vacate judgment whether plaintiff was served with citation held for jury.**

Whether plaintiff was served with citation *held* for jury, in suit to set aside judgment.

5. **Evidence** ⬩75—**Party peculiarly possessed of certain knowledge has duty of producing evidence thereon.**

Where one party is peculiarly possessed of certain knowledge, he has the duty of producing the evidence thereon.

6. **Evidence** ⬩75—**Failure to produce evidence peculiarly within party's control raises presumption that it would operate against him.**

The failure to produce evidence peculiarly within a party's control, especially where the opposite party makes a prima facie case, raises presumption that, if produced, evidence would operate against him, and every intendment will favor opposite party.

7. **Mines and minerals** ⬩54½—**In widow's suit to set aside assignment of mineral rights as security, induced by false statements of husband's indebtedness, where she testified she never saw husband's notes, defendants had burden of proving indebtedness.**

In suit by widow to set aside assignment of mineral rights as security for husband's indebtedness, alleged to have been fraudulently induced by false statements, where she testified that, when she paid alleged indebtedness by making the assignment, no notes were delivered to her, and that she had never seen any notes, defendants *held* to have burden of proving notes or some other competent proof of indebtedness existed, and that debt had not been paid when widow executed assignment.

8. **Infants** ⬩89—**Minor children, though served with citation, could not be divested of interest in deceased father's estate without service on mother, who was either administratrix, executrix, or community survivor.**

Minor children, though served with citation in suit to foreclose purported judgment lien on certain mineral lease, could not be divested of any interest in their deceased father's estate, especially where the record was silent as to the appointment of a guardian ad litem to represent their interests, without service on their mother, who was natural guardian, and in effect guardian of the children's estate, and who was either executrix, administratrix, or community survivor of the community estate of herself and husband.

Appeal from District Court, Montague County; Vincent Stine, Judge.

Suit by Mrs. M. M. Jameson and others against the Farmers' State Bank of Burkburnett and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Fitzgerald & Hatchitt and H. R. Wilson, all of Wichita Falls, and Donald & Donald, of Bowie, for appellants.

Benson & Benson, of Bowie, and Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellees.

BUCK, J. Mrs. M. M. Jameson, in her individual capacity, and as community administratrix of the estate of herself and S. M. Jameson, deceased, and Hazel, Helen, and Dorothy Jameson, the daughters of plaintiff and her deceased husband, sued the Farmers' State Bank of Burkburnett, Wichita county, and W. H. Anchor, Perry Browning, and C. McCall, alleging that she was the surviving wife of S. M. Jameson, deceased, and had been appointed community administratrix of the community estate; that said S. M. Jameson died in Wichita county on the 13th day of February, 1923; that said community estate is vested with a good title in and to a certain leasehold estate of oil and gas and other minerals, being an undivided one-fourth of one-half of the oil and gas and other minerals under the land described in said petition.

Plaintiff further alleged that during the lifetime of her deceased husband he executed a certain assignment of interest in and to the mineral rights in the described property and leasehold estate to defendant C. McCall, or to the bank of which he was an officer, to secure certain indebtedness then owing to said bank which was evidenced by a certain note; that said assignment was intended as a deed of trust or mortgage, and was not intended to be an unconditional assignment, but was given for the purpose, and only purpose, of securing the indebtedness aforesaid, which the said S. M. Jameson, deceased, was owing the defendant C. McCall, or to his bank, at said time, and same was evidenced by a promissory note. Plaintiff further averred that S. M. Jameson, prior to the date of his death, had paid all of said indebtedness, and at the date of his death did not owe any portion of said indebtedness whereby the assignment aforesaid was of no further force and effect.

Plaintiff further averred that, subsequent to her husband's death, the defendant C. McCall came to see her, and made certain false and fraudulent statements and representations, to the effect that the said S. M. Jameson, at the date of his death, was indebted to defendant C. McCall, or his bank, in the sum of $4,500, and that the said S. M. Jame-

son had executed the assignment hereinbefore mentioned to secure this indebtedness, and that the same had never been paid; that plaintiff believed these statements to be true, and relied on them, and the plaintiff Mrs. M. M. Jameson entered into a contract on October 5, 1923, whereby she agreed to sign a mineral deed covering a one sixty-fourth of all the mineral rights in and under the lands and premises mentioned and described, which was intended as a mortgage or deed of trust to secure the said defendant McCall and the Farmers' & Merchants' National Bank of Nocona, Tex., for the sum of $4,500, which the said C. McCall had falsely and fraudulently represented that her deceased husband was indebted at said time to said bank. It was provided by said last contract, further, that the said McCall might sell and dispose of the leasehold estate aforesaid, and retain out of the proceeds arising from said sale the sum of $4,500, and the accrued interest thereon from the date of said contract, and all sums of money in excess of this amount secured from the sale of said property should be equally divided between the plaintiff and the defendant C. McCall, until the plaintiff should receive the sum of $5,000, after which time the entire proceeds should go to the defendant C. McCall; that an assignment was executed, based upon said contract, and on the same date; that the plaintiff would never have executed the contract had it not been for the false and fraudulent statements and representations made to her by the defendant McCall; that plaintiff wanted to pay any debts that were owed by her deceased husband at the date of his death, and that she did not question the statements and representations made by McCall, because she knew that her husband had done business at McCall's bank during his lifetime, and she had no cause or reason to think at that time that the statements were false, fraudulent, and untrue; that she learned this fact about the first part of 1926, when her suspicions were aroused by a suit filed in the district court of Montague county by McCall and the defendants.

Plaintiff further pleaded that, if she be mistaken as to the false and fraudulent representations being made by defendant McCall, then that the contract was usurious, in that it provided for the payment of a greater rate of interest than that allowed by law, because the defendant McCall, by the terms of said contract, was not only to have the legal rate of interest on the loan, if any, theretofore made by her husband, but was to have one-half of the first $10,000 above the debt, arising from the sale of said security, and thereafter have all of the remainder received by him from the sale of said leasehold estate.

Plaintiff further pleaded that she was informed, and verily believed, and upon said information and belief charged, that defendant McCall, after the death of her husband, set about to cheat, swindle, and defeat her and her minor children out of her said interest in the community estate of her deceased husband, and, in order to induce her to execute to him a straight assignment of said oil interest, he had made the false and fraudulent statements aforesaid, and thereafter a certain suit was filed in the district court (No. 6636) by W. H. Anchor and Perry Browning against the defendant C. McCall and the plaintiffs, seeking to foreclose a purported judgment lien on the property theretofore described in plaintiff's petition, and, at the suggestion of defendant McCall, plaintiff employed R. E. Taylor, a practicing attorney of Wichita Falls, to represent her in said cause last mentioned, who, as she understood, was to assist the defendant McCall to defeat the suit of Anchor and Browning; that said cause No. 6636 was not a suit by defendant McCall against this plaintiff, and there was no controversy involved therein between plaintiff and defendant McCall; that plaintiff advised her said attorney that, as soon as said cause No. 6636 was tried, she intended to settle the controversy between her and defendant McCall, if it took a lawsuit to settle the same, and plaintiff charged that, by some fraudulent scheme or collusion between said Perry Browning and W. H. Anchor and the defendants McCall and the bank, cause No. 6636 was dismissed on January 15, 1926, whereby plaintiffs lost all their interest in the leasehold estate aforesaid, and judgment was taken in favor of all the defendants as against plaintiffs in cause No. 6635 by a certain purported cross-action which was unknown to the plaintiff Mrs. M. M. Jameson, which she verily believed and charged to be a fraudulent scheme and agreement between all of said parties, which was unknown and kept secret from the court in order to divest her and her children of all their interest in the leasehold estate aforesaid.

She further pleaded that the leasehold estate belonged to the community estate of herself and her deceased husband, which she conveyed, by reason of the alleged fraudulent statements of defendant McCall, to him, and which was of the reasonable value of $10,000 or more; that said R. E. Taylor, who it is claimed represented her, had no authority to represent her in the suit in which judgment was obtained, but only in the suit that was dismissed; that the judgment in favor of defendant Browning and Anchor was based upon a purported judgment lien against said property, which in truth and in fact was never a lien against the property, because her deceased husband, at the time of his death, did not owe said Anchor and Browning anything, and for the further reason that the judgment which purported to create a lien against said property did not create a lien, because the debt, if any, had been fully satisfied prior to the entry of the

judgment; that a judgment in favor of defendant bank of Burkburnett was unauthorized, because said debt had been paid prior to her husband's death.

Plaintiff further pleaded that, had she been served with citation in cause No. 6635, styled C. McCall v. W. H. Anchor et al., she would have employed an attorney to represent her, and would have set up as against McCall and the other defendants the matters pleaded in this petition; that same constituted a good defense, and is meritorious, and plaintiff pleaded that no such judgment would have been rendered by the trial court had the court been advised of the facts and had known the truth; that, until the January term of court had adjourned, she did not know anything of the facts pleaded by her in this cause. Wherefore plaintiffs prayed that the defendants be cited to appear, and the judgment in cause No. 6635 be set aside, and that the contract theretofore made and executed by the defendant McCall and plaintiff Mrs. M. M. Jameson, and the assignment based thereon, be annulled, vacated, and set aside, and that the cause of action urged by defendants Browning and Anchor and the Farmers' State Bank of Burkburnett, if any cause of action either of them had, be set down for trial, and plaintiffs be given an opportunity to defend said cause of action.

The defendant McCall filed his answer, in which he pleaded that S. M. Jameson, before his death, executed and delivered a conveyance to defendant covering a one-fourth of one-sixteenth interest in and to all of the oil, gas, and other minerals in and under the tract of land described in plaintiff's petition; that it was intended by the transfer of said interest to convey to the defendant an undivided one-fourth of one-half interest in and to all of the oil, gas, and other minerals in and under the said lands, but, through mutual mistake of defendant and said S. M. Jameson in preparing such instrument, the same only conveyed by its terms one-fourth of one-sixteenth of said mineral rights; that by reason of such mutual mistake said instrument failed to convey the interest so intended to be conveyed and covered thereby.

Defendant McCall further pleaded that S. M. Jameson, at the time of his death, was indebted to the Farmers' & Merchants' National Bank of Nocona, of which bank said defendant was president, and had charge and control thereof in an amount of approximately $5,000; the exact amount being alleged as unknown to the defendant at the time of his plea; that, at the time of the death of said S. M. Jameson, all of the indebtedness owing by said Jameson to the Nocona Bank was past due and unpaid; that before the death of said Jameson the latter agreed to execute, and did execute, said mineral deed and transfer, with the express agreement that the same should and would be held as security for the total amount of indebtedness due to the said bank, as well as to secure any other advancement that should be or would be made by the said bank or by the defendant McCall to the said Jameson, which transfer and assignment was filed for record on March 29, 1925, and recorded in the deed records of Montague county.

Defendant further pleaded that, at the time of the death of said Jameson, he was indebted to the Farmers' & Merchants' National Bank of Nocona in the sum of $970, with interest, and was also indebted to the defendant McCall in a sum amounting to approximately $3,500, the exact amount of which was unknown to the defendant at this time, and both of which sums of money were secured by the defendant's holding the above-mentioned transfer of the mineral rights in and to the lands described in plaintiff's original petition, all of which said sums of money were past due and unpaid. He further pleaded that, after the death of said Jameson, he went to see the plaintiff. Mrs. M. M. Jameson, who had duly qualified as community survivor, and that, acting individually for herself, and also as such qualified survivor, she made and executed and delivered to defendant an assignment covering an undivided one-fourth of one-half of the oil gas and other minerals under these lands; that, in consideration of said transfer and assignment made and executed by the plaintiff Mrs. M. M. Jameson, the defendant canceled, discharged, and quitclaimed all of the indebtedness due and owing by said S. M. Jameson to the bank and to him individually, and agreed to become obligated, and did become obligated, by the terms of such agreement that, in case the mineral rights theretofore owned and held by the said S. M. Jameson and transferred to the defendant should be disposed of and more revenues derived therefrom than the amount of indebtedness owing the defendant and his bank, then he would divide the excess equally with Mrs. M. M. Jameson up to $10,000; that by reason of said agreement, transfer, and assignment the title to said mineral rights became vested in the defendant, in consideration of the cancellation and discharge of the above-mentioned sums of indebtednesss due the defendant and said bank, and the plaintiffs herein had no further claim to such mineral rights, except a claim to a part of the proceeds heretofore mentioned.

Defendant denied that all the indebtedness due and owing to the bank and to him individually had been paid by said Jameson prior to his death, but that there was still owing by said Jameson approximately $4,500. Defendant denied that the mineral rights described in plaintiff's petition were worth $10,000 at the time the same were transferred to the defendant by the said S. M. Jameson, but were worth considerably less. He denied he intended to cheat or swindle the plaintiffs

or that he had anything to do with the employment of R. E. Taylor for the plaintiffs in causes No. 6636 or 6635, and especially pleaded the facts to be that the plaintiff Mrs. M. M. Jameson, after the filing of the above-mentioned suits, personally notified defendant that said R. E. Taylor was representing her, and referred defendant to him for information and discussion of the same; that no fraud or other undue advantage was practiced on the plaintiffs herein by defendant, nor by any other person within the knowledge of defendant. He further pleaded that both suits were pending in the district court of Montague county, and defendant had numerous conferences with the plaintiff Mrs. M. M. Jameson, and discussed the question involved in said cases, as well as the settlement under which the judgment in cause No. 6635 was entered, and at each of which conferences the said Mrs. M. M. Jameson had her attorney, R. E. Taylor, present, and at all times referred all matters concerning her interest to the said R. E. Taylor, and insisted that he was representing her therein.

Further pleadings were made by defendant in his answer, but we believe we have substantially shown his defense.

Defendants Browning and Anchor and the Farmers' State Bank of Burkburnett filed answers, consisting of a general demurrer and a general denial, and specially pleaded that the defendant Anchor had paid a debt in the sum of $6,575 due by S. M. Jameson, and the defendant Anchor was surety only for said Jameson; that he was entitled to be reimbursed for the amount of money he had paid out on the indebtedness owing by the said S. M. Jameson.

Just prior to the trial plaintiff filed a motion for continuance, in which she pleaded that she understood, and so charged, that C. F. Spencer would be a witness against her in the trial, and that said Spencer had explained to her brother, Tom Cochran, that said instruments were executed for the purpose of securing a sum of about $4,500 due said bank and said McCall, and that, by taking this deal for and in behalf of said Mrs. M. M. Jameson and her children, it would relieve her of the immediate necessity of paying this indebtedness, and, in the event the oil interest sued for proved to be very valuable, which it was believed it would be, then that the interest of the bank and said McCall could be taken out of the proceeds arising from the sale of said interest, and she and her children could have the remainder; that he (Spencer) felt that it was a good transaction, and for the best interest of said plaintiff and her said children. But, inasmuch as the court disposed of the case on other grounds, we will not further consider this motion for continuance.

The court gave a peremptory instruction, and the jury rendered a verdict accordingly, and upon the verdict so rendered the court entered judgment for defendants. From this judgment the plaintiffs have appealed.

### Opinion.

The evidence shows that citation was issued and served on the three minor children of Mrs. M. M. Jameson in cause No. 6635, and there is some evidence to the effect that plaintiff Mrs. M. M. Jameson was served with a copy of Anchor and Browning's cross-petition in such case. When the plaintiffs closed their case, the court instructed a verdict for the defendants, based upon the theory that, regardless of whether the plaintiffs were served with citation in the case wherein judgment was rendered, no reason had been shown authorizing a contrary decision, and that the court would not set aside that judgment when it would be its duty to immediately render the same judgment in said cause. The appellants take the position that it was a question of fact to be determined by the jury as to whether Mrs. M. M. Jameson was served with citation or had notice of the suit, and further contend that, in case no citation was found by the jury to have been served, such judgment must be set aside, regardless of whether the same or another judgment should be entered on such controversy.

The district clerk of Montague county testified that it was his recollection that the judgment entered was an agreed one; that he did not remember whether the plaintiff Mrs. M. M. Jameson was served with citation or not, but that citation was issued to the minor children, Hazel, Dorothy, and Helen Jameson; that he understood that Mrs. Jameson was to come in and answer; that he did not find among the papers any citation to Mrs. Jameson.

Mrs. Jameson testified that her husband had been killed in an automobile accident; that, at the time defendant McCall came to see her about the debts claimed to be owing by her deceased husband to the Nocona bank and to Mr. McCall, C. F. Spencer was present; that she talked to Mr. McCall at another time over the long-distance telephone, and he told her of the filing of the suit in which Perry Browning and W. H. Anchor claimed that they had paid a note made by said S. M. Jameson, and said McCall suggested that she get some one to represent her; that she got said R. E. Taylor to assist Benson & Benson in representing her in cause No. 6636; that she was not served with citation in the suit of McCall against Anchor and herself and children in cause No. 6635; that she knew nothing about said agreed judgment in that suit, and first learned of it after the January term of court had adjourned; that she learned of it from O. H. Herndon of Kansas City, who had his abstract brought down to date, and who had the same interest in the leases that her husband had; that, as

soon as she learned of this agreed judgment, she employed an attorney to represent her.

H. N. Dearmore, the district clerk, further testified that in cause No. 6636, which was subsequently dismissed, the return of the officer showed that citation was served on the minor children and also on Mrs. Jameson; that in cause No. 6635 no citation was issued or served on Mrs. Jameson, except as to Browning and Anchor's cross-action, and no citation was issued or served in behalf of the bank of Burkburnett, and no answer was filed in this case on behalf of Mrs. Jameson or the three minor children, but that citations for the minor children show to have been served as to plaintiff's cause of action, and also as to Perry Browning and W. H. Anchor's cause of action.

[1] Mere knowledge of the filing of a suit, and even the attendance on court, does not give jurisdiction supporting a default judgment. See Gutierrez v. Cuellar, 236 S. W. 497, by the San Antonio Court of Civil Appeals. Article 2050, 1925 Revised Statutes, reads:

"In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as. prescribed in this chapter, except where otherwise expressly provided by law."

In many earlier cases it has been held that the execution of a judgment should not be enjoined on the ground that the judgment debtor was not served with summons, where he fails to allege and prove that he had a meritorious defense or other equity. But in the later decisions, including decisions of the Supreme Court, it is held that such rule does not apply when a direct attack is made on the judgment, and even in some cases of a collateral attack a judgment (against unknown owners) has been set aside where the evidence showed that the owners of the land were known to the plaintiff, or could have been known in the exercise of reasonable diligence. Scales v. Wren, 103 Tex. 304, 127 S. W. 164.

In Kimmell v. Edwards, 194 S. W. 168, this court, on motion for rehearing by Justice Dunklin, held, in a direct attack on a personal judgment, valid on its face, rendered by a court having no jurisdiction of the person of defendant at the time of the rendition, such judgment is void. In the same case, in (Tex. Civ. App.) 193 S. W. 363, it was held that the statutory requirements regarding citations and service thereof must be strictly followed to acquire jurisdiction. A writ of error was refused in this case.

In Levy v. Roper, 113 Tex. 356, 256 S. W. 251, the Supreme Court held, in an opinion by Justice Greenwood, that a judgment rendered against defendant without citation against him or appearance by or for him is a nullity, though jurisdictional recitals in a judgment preclude a collateral attack in opposition to the verity of such recitals. The suit in the instant case was a direct attack upon the judgment. See Southern Surety Co. of Texas v. Texas Oil Clearing House (Tex. Civ. App.) 266 S. W. 529. In the Supreme Court decision the court held that relief sought in proceedings to enjoin execution of a judgment constituted a direct attack upon the judgment. But in that case the evidence showed that plaintiff in error knew of the rendition of the judgment, and had ample time to have made a motion for new trial, or by appeal or writ of error set it aside. Hence it did not show the necessary diligence, and that its want of diligence was fatal.

Brown v. Clippinger, 113 Tex. 364, 256 S. W. 254, was a collateral attack, and therefore, in order to justify the trial court in setting the judgment aside, the plaintiff below was required to allege, among other allegations, that he had a meritorious defense.

[2] After a somewhat lengthy examination of the authorities, we are of the opinion that, in the case of a direct attack, by a suit in the nature of a bill of review, as this, it is not necessary to show a meritorious defense, where the allegations and proof are that judgment has been taken against the plaintiff without citation properly served. We conclude that such judgment is in effect a nullity, and that the showing that judgment was taken without citation is sufficient in order to justify the trial court to grant a new trial. Therefore we conclude that the trial court erred in denying plaintiff a new trial as to the cause of action asserted individually and as community administratrix, or community survivor, by Mrs. Jameson, and, accordingly, the judgment is reversed and the cause is remanded as to her.

[3-7] We are further of the opinion that the evidence favorable to the plaintiff's rights is more than "a scintilla of proof." She testified that, at the time she paid the note, McCall never delivered to her the note claimed to be due and owing to the bank or to him; that up to the time she testified she had never seen either note. We believe that the almost universal, if not the universal, custom of banks, is to require notes signed and executed by those to whom they loan money, and that a like custom prevails on the part of business men, such as defendant McCall, who was president of the bank, and that the evidence cited raises the question as to whether or not such notes were in existence. We are further of the opinion that the evidence raises the question as to whether Mrs. Jameson was served with citation as to the so-called cross-action of Browning and Anchor. She testified that she was not served, and the district clerk testified that the return of the officer showed that she was served. The rule that upon him who is peculiarly possessed of certain knowledge devolves the duty

of producing the evidence thereon will apply in this case. The failure to produce evidence peculiarly within a party's control, especially. where the other party has made a prima facie case, raises the presumption that, if produced, it would operate against him, and every intendment will be in favor of the opposite party. Bailey v. Hicks, 16 Tex. 222; Thompson v. Shannon, 9 Tex. 536; Chandler v. Meckling, 22 Tex. 36, 44; Needham v. State, 19 Tex. 332; Mutual Life Ins. Co. v. Tillman, 84 Tex. 31, 33, 19 S. W. 294. It is further held that only slight evidence in a case of this kind is necessary. Chandler v. Meckling, supra. S. M. Jameson was dead. The bank's officers and employees were probably the only ones who knew whether or not an unpaid note to the bank existed, and McCall or his employees were the only ones who knew whether an unpaid note executed by S. M. Jameson to him existed. The plaintiff, according to her testimony, did not know, but only testified to the failure of either the bank or McCall to deliver to her or show to her any notes or other evidence of indebtedness. We think, upon the plaintiff's testimony, as shown, that it would devolve upon defendant McCall to show that such note or notes existed, or that some other competent proof of indebtedness existed, and that the debt had not been paid at the time of the execution of the assignment by plaintiff Mrs. Jameson.

[8] But should the judgment below be reversed as to the minor children? Mrs. Jameson was either the executrix, administratrix, or the community survivor of the community estate of herself and husband. All three terms are used in the pleadings and the evidence, referring to the capacity in which she sued, or the relation to the community estate held by her. At any rate, she was the duly authorized representative of the community estate, and, at least, the natural guardian of her minor children, and, in effect, the guardian of their estate. She must have been served before the children could have been legally divested of any interest in the estate of their father. The record is silent as to whether there was a guardian ad litem appointed by the court to represent the interest of the minor children in cause No. 6635, which the Commission of Appeals held in Williams v. Patterson, 288 S. W. 132, was necessary where a personal judgment is sought against the minors. But, if it be presumed that this was done, or that no personal judgment against the minors was sought, yet such fact would not give the court jurisdiction to divest the minors of their interests in the estate without service upon Mrs. Jameson in her representative capacity.

We conclude that the judgment as to the minors should also be reversed and the cause remanded, and it is so ordered.

CONNER, C. J., recused and not sitting.

## On Motion for Rehearing.

BUCK, J. Special attack is made on our holding in the original opinion that on a direct attack a meritorious defense need not be proven, where the record or facts disclosed that the defendant was not served with citation, and no appearance was entered. In the case of Scales v. Wren, 103 Tex. 304, 127 S. W. 164, where the owner of land had his title on record, ascertainable by the county attorney who had filed the suit, and the owner was within the jurisdiction of the court, it was held by the Supreme Court that he was not a party to nor bound by a judgment and sale of the land for taxes thereunder in a proceeding against the "unknown owner" of the land. The attack in this case was collateral, but Chief Justice Gaines, speaking for the court, said:

"It is not easy to overcome a judgment upon collateral attack, for the reason that every question that could have been determined in the case is presumed to have been correctly determined in the former judgment and has become res adjudicata. But the question in the instant case is, Have you got the proper parties? The statute authorizes a suit against the 'unknown owner' of the land and not against an owner who is known and whose name and residence could have been discovered upon proper inquiry. Hence a judgment against the unknown owner does not conclude the title of one who is known or can be known. No one can doubt that the judgment is conclusive as between the state and the unknown owner; but here we have a case in which the owner was known or could have been known by the slightest diligence. The known owner is entitled to his day in court and to be heard on defense of his rights. He is entitled to service of citation if he be within the jurisdiction of the court. Not having been, served with process and being within the jurisdiction of the court, and not being an unknown, owner, he was not a party to the proceedings and we fail to see how he can be concluded by the judgment.

Therefore the judgment of the Court of Civil Appeals is affirmed."

In Adams v. First Nat. Bank of San Augustine, 294 S. W. 909, by the Beaumont Court of Civil Appeals, a judgment had been taken by plaintiff during the absence of the defendant and her counsel. An original suit was filed in the district court of San Augustine county by Mrs. Adams to cancel and annul the judgment rendered against her and her codefendant. In disposing of the case, the court said:

"Before appellant in this case would be entitled to the relief sought by her, it was requisite that her petition allege sufficient facts to acquit herself and attorney of a negligent failure to be present at the trial of the former suit, and also it was incumbent upon her to allege facts showing that she had a meritorious defense to the former suit, which she was prevented from making by the fraud as alleged by her on the part of the bank's attorney in that.

suit. If her petition in this case made this showing, she was entitled to have the former judgment as to her canceled and annulled and a new trial granted as prayed by her. We agree with what seems to have been the view of the trial court, that appellant's petition in this suit alleged facts which, if true, acquitted her and her attorney of a negligent failure to be present at the trial of the former suit. The sufficiency of the facts set up as an excuse for their absence was a question of law for the court, and he evidently determined that in appellant's favor when he overruled a general demurrer, but as to whether the facts alleged by her acquitted herself and attorney of a negligent failure to be present at the former trial made an issue of fact which was for the determination of the jury in the case, and the court could not take that issue away from the jury."

34 Corpus Juris, p. 333, in discussing the sufficiency of the pleadings to authorize and require the setting aside of a judgment, where a separate suit is filed therefor, says:

"Exceptions to the rule have been recognized in the following classes of cases in which the party is entitled to have judgment against him vacated without any showing of merit, namely, where the judgment attacked is void for want of jurisdiction, although some cases hold that merit must be shown as a condition of equitable relief," etc.

This authority cites Union Pac. R. Co. v. Miller (Tex. Civ. App.) 192 S. W. 358, and Miller v. Santa Anna First State Bank & Trust Co. (Tex. Civ. App.) 184 S. W. 614; McCaulley v. Western Nat. Bank (Tex. Civ. App.) 173 S. W. 1000—all Texas cases.

In Union Pac. Ry. Co. v. Miller, supra, the Amarillo Court of Civil Appeals, in an opinion by Justice Boyce, said:

"Some confusion at one time existed in the decisions of this state as to whether or not in this character of case it would be necessary for one seeking to enjoin a judgment alleged to be void, to allege and prove that he had a meritorious defense to the original cause of action on which the judgment was rendered. Out of this confusion a rule of decision, based on a distinction between judgments where the invalidity appears from the face of the record and those where the invalidity is only made to appear by extrinsic evidence, has been evolved, which, it is claimed, will reconcile the apparent conflict. Whether this distinction may with good reason be applied to this class of cases or not, it seems to have obtained recognition by the Supreme Court, and the rule based on this distinction seems to be now well settled. August Kern Barber Supply Co. v. Freeze, 96 Tex. 513, 74 S. W. 303; Chambers v. Gallup, 30 Tex. Civ. App. 424, 70 S. W. 1009 (in which writ of error was denied by the Supreme Court); Collin County Bank v. McCall Hardware Co. [Tex. Civ. App.] 161 S. W. 950; Foust v. Warren [Tex. Civ. App.] 72 S. W. 404; Western Lumber Company v. C., R. I. & G. R. Co. [Tex. Civ. App.] 180 S. W. 644; San Bernardo Townsite Co. v. Hocker [Tex. Civ. App.] 176 S. W. 644. The rule announced by these decisions may be stated thus: Where an

299 S.W.—30

injunction is sought against the execution of a judgment alleged to be void, it is not necessary to show a meritorious defense to the original cause of action in those cases where the invalidity of the judgment appears upon the face of the record; but, if extrinsic evidence is necessary to establish such invalidity, then it will be necessary for the plaintiff seeking the injunction to show a meritorious defense.

"The application of this rule to the facts of this case, as above stated, is decisive of the case against appellant. It will not be necessary to consider other questions presented, and the case will be affirmed."

In Miller v. First State Bank & Trust Co., supra, it is held that, where no legal service is had upon defendant, a judgment by default may be set aside without showing a meritorious defense or a sufficient excuse for failure to appear; the judgment being void for want of jurisdiction. This case does not appear to have gone to the Supreme Court.

In McCaulley v. Western Nat. Bank, supra, by this court, it was held that on a writ of error to a default judgment, as being based on a defective citation, defendants need not allege the nature of their defense to the action, the rule of meritorious defense being confined to collateral attacks. This case was not reviewed by the Supreme Court, but the holding has been cited with approval in at least two cases, to wit, Godshalk v. Martin, 200 S. W. 535, by the Amarillo Court of Civil Appeals, and in Bridges v. Hollifield, 208 S. W. 756, by the Beaumont Court of Civil Appeals.

In Hanson v. Wolcott, 19 Kan. 207, it is said:

"It is true, that section 572 of the Civil Code provides that a judgment shall not be vacated on motion, or petition, until it is adjudged that there is a valid defense to the action; but this section in the nature of things does not apply to judgments rendered by a court having no jurisdiction of the person of the defendant, and where the judgment, so-called, is a nullity. Independent of sections 572 and 575, the court has the power to vacate void judgments. The addition of the clause in section 575, gives no additional power to the court. It simply enunciates a power it always possessed."

In Walker v. Chatterton, 222 S. W. 1100, by Commission of Appeals, presiding Justice Sonfield writing the opinion, the court held that, a judgment rendered against the surety reciting appearance by the surety, in an action on such judgment, want of jurisdiction over the person of the surety may be set up by him, such defense not constituting a collateral attack, but a direct attack.

But, even if we be mistaken as to the necessity of proving a meritorious defense, we think the facts stated in our original opinion, which were proven, were sufficient, in the absence of proof to the contrary, to require a reversal of the original judgment, especially in view of the fact that Mrs. Jameson testi-

fied that McCall represented to her, at the time she executed the contract, that her husband was owing the bank and McCall $4,500; that about $2,000 was due the bank, and $2,500 was due McCall, but McCall pleaded in this case that, at the time of the death of S. M. Jameson, the latter was indebted to the Farmers' & Merchants' Bank of Nocona in the sum of $970, with interest, and was indebted to him in "a sum of money amounting to approximately $3,500, the exact amount of which is to this defendant unknown at this time."

We are of the opinion that our former judgment correctly disposed of the questions involved in this case, and the motion for rehearing is overruled.

CONNER, C. J. I concur in the reversal on the general ground stated in the above opinion of the majority, but do not concur in the proposition that the judgment should be set aside, regardless of a showing of a meritorious defense, if indeed the opinion of the majority is susceptible of such construction.